## No. 25-1279

## United States Court Of Appeals For The Seventh Circuit
_____

### WISCONSIN VOTERS ALLIANCE, et al.,

Plaintiffs-Appellants,

v.

### DON M. MILLIS, et al.,

Defendants-Appellees.
_____

On Appeal from the U.S. District Court for the Eastern District of Wisconsin,
Case No: 1:23-cv-01416-WCG
District Judge William C. Griesbach
Date NOA filed in District Court: 2/19/2025
_____

## APPELLANTS' PRINCIPAL BRIEF
_____

Erick G. Kaardal, (WI) 1035141
Mohrman, Kaardal & Erickson, P.A.
150 South Fifth Street, Suite 3100
Minneapolis, Minnesota 55402
Telephone: 612-341-1074
Email: kaardal@mklaw.com
*Attorneys for Plaintiffs-Appellants*

April 1, 2025

# DISCLOSURE STATEMENT

Save As    Clear Form

### APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 25-1279

Short Caption: Wisconsin Voter Alliance, et al. v. Don M. Millis, et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
 Wisconsin Voter Alliance, Ron Heuer, and Kenneth Brown

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
 Mohrman, Kaardal & Erickson, P.A.

(3) If the party, amicus or intervenor is a corporation:

 i) Identify all its parent corporations, if any; and

 None

 ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

 None

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

Attorney's Signature: Electronically Signed by Erick G. Kaardal    Date: 02/26/2025

Attorney's Printed Name: Erick G. Kaardal

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ✓  No ☐

Address: Mohrman, Kaardal & Erickson, P.A. 150 South Fifth Street, Suite 3100, Minneapolis, MN 55402

Phone Number: 612-341-1074    Fax Number:

E-Mail Address: kaardal@mklaw.com

rev. 12/19 AK

# TABLE OF CONTENTS

DISCLOSURE STATEMENT ........................................................................ i

TABLE OF AUTHORITIES ........................................................................ v

JURISDICTIONAL STATEMENT ............................................................... 1

I.   Jurisdiction of the District Court ................................................... 1

II.  Jurisdiction of the Court of Appeals ............................................ 2

ISSUES PRESENTED ................................................................................. 3

INTRODUCTION ........................................................................................ 4

STATEMENT OF THE CASE ..................................................................... 6

A.   The Wisconsin Voter Alliance is an accomplished organization
     providing a variety of core activities as an issue-advocacy
     organization. .................................................................................. 6

B.   In October 2022, the WVA and Heuer filed a HAVA complaint
     against the WEC, which was *returned* without consideration and a
     "no decision" by WEC .................................................................. 8

C.   In October 2023, the WVA, Heuer, and Kenneth Brown filed
     another HAVA complaint against the WEC, which was returned
     with "no decision" by WEC. ........................................................ 9

D.   The WEC's no-decisions regarding both the September 2022 and
     October 2023 HAVA complaints provided no procedure and no
     prescribed remedy for the WVA, Heuer, or Brown and did not
     refer the matters to an administrative law judge for adjudication as a
     viable resolution. ......................................................................... 10

E.   The district court outlined the statutory scheme regarding  HAVA
     and the HAVA complaint process. .............................................. 14

F.   The district court dismissed the amended complaint for lack of
     standing, and denied the Appellants motion for summary judgment
     without reaching the merits. ........................................................ 16

SUMMARY OF THE ARGUMENT............................................................................18

ARGUMENT.....................................................................................................19

I.   The Appellant Wisconsin Voter Alliance has Article III
organizational standing because of the state agency's failure to
consider and decide a Help America Vote Act complaint as
mandated under HAVA, which directly affected and interfered with
the organization's core activities. ..............................................................19

    A.   Review of a complaint's dismissal for lack of standing is *de novo*
and clear error for facts.......................................................................19

    B.   Article III standing for organizations allows suit for injuries
sustained and the WVA meets those standards as an issue-
advocacy organization in which state inaction affected core
WVA activities causing imminent harm. ............................................20

        1. Organizational standing can be based on core activities including
educating its members and public, and reporting and
recommending changes to the law to legislators and other
governmental officials.....................................................................21

        2. The WVA also has associational standing....................................30

II.   Individual activists, Appellants Ron Heuer and Kenneth Brown
have Article III standing because the WEC, by not considering or
deciding their HAVA complaints when HAVA mandates a decision
be made, have identified a "real" or "immediate harm."........................32

    A.   Review of a complaint's dismissal for lack of standing is *de novo* and
clear error for facts. ...........................................................................32

    B.   Article III standing for individuals requires the establishment of an
injury in fact, traceable to the defendant, and redressable with a
favorable district court decision..........................................................32

    C.   Heuer and Brown, because they have shown their injury as
particularized and actual, as conceded by the district court, meet the
requirement of a concrete injufy; so; their complaint of HAVA
violations should have been adjudcicated...........................................33

CONCLUSION ................................................................................................ 38

CERTIFICATE OF COMPLIANCE ............................................................ 40

APPELLANT COUNSEL'S AFFIRMATIVE STATEMENT................................ 41

CERTIFICATE OF SERVICE ...................................................................... 41

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Allen v. Wright,*
   468 U.S. 737 (1984) ...................................................................... 37

*Arizonans for Official English v. Arizona,*
   520 U.S. 43 (1997) ......................................................................... 20

*Borough of Duryea v. Guarnieri,*
   564 U.S. 379 (2011) ....................................................................... 33

*Bost v. Illinois State Bd. of Elections,*
   114 F.4th 634 (7th Cir. 2024) ................................................... 20, 21

*Bridges v. Gilbert,*
   557 F.3d 541 (7th Cir. 2009) ........................................................ 29

*California v. Texas,*
   593 U.S. 659 (2021) ....................................................................... 32

*Cause Indiana v. Lawson,*
   937 F.3d 944 (7th Cir. 2019) ................................................20, 21, 32

*Coniston Corp. v. Vill. of Hoffman Estates,*
   *et al.,* 844 F.2d 461 (7th Cir. 1988) .............................................. 14

*DaimlerChrysler Corp. v. Cuno,*
   547 U.S. 332 (2006) ....................................................................... 32

*Duncan Place Owners Ass'n v. Danze, Inc.,* No. 15 C 01662,
   2015 WL 5445024 (N.D. Ill. Sept. 15, 2015) ............................... 28

*Food and Drug Administration v. All. for Hippocratic,*
   *Med.,* 602 U.S. 367 (2024) .....................................................passim

*GEFT Outdoors, LLC v. City of Westfield,*
   922 F.3d 357 (7th Cir. 2019) ........................................................ 14

*Havens Realty Corp. v. Coleman*,
455 U.S. 363 (1982) ............................................................. 22, 23

*Hunt v. Washington State Apple Advert. Comm'n*,
432 U.S. 333 (1977) ...................................................................... 31

*Jones v. Brown*,
300 F.Supp.2d 674 (N.D. Ind. 2003) ........................................... 29

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 ............................................................. 20, 32, 33, 38

*Massachusetts v. EPA*,
549 U.S. 497 (2007) ...................................................................... 20

*Milwaukee Police Assn. v. Flynn*,
863 F.3d 636 (7th Cir. 2017) ........................................................ 20

*Nettles v. Midland Funding LLC*,
983 F.3d 896 (7th Cir. 2020) ................................................... 28, 37

*Osteen v. Henley*,
13 F.3d 221 (7th Cir. 1993) .......................................................... 14

*Parents Protecting Our Children, UA v. Eau Claire Area Sch. Dist., Wisconsin*,
95 F.4th 501 (7th Cir. 2024) ........................................................ 31

*Payton v. Cnty. of Kane*,
308 F.3d 673 (7th Cir. 2002) ................................................... 19, 32

*Pro–Eco, Inc. v. Bd. of Comm'rs*,
57 F.3d 505 (7th Cir. 1995) .......................................................... 14

*Rifkin v. Bear Stearns & Co., Inc.*,
248 F.3d 628 (7th Cir. 2001) ................................................... 19, 32

*Speech First, Inc. v. Cartwright*,
32 F.4th 1110 (11th Cir. 2022) ..................................................... 34

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ................................................................passim

*Summers v. Earth Island Inst.,*
   555 U.S. 488 (2009) ................................................................. 21

*Thomas v. Collins,*
   323 U.S. 516 (1945) ................................................................. 33

*TransUnion v. Ramirez,*
   594 U.S. 413, 141 S.Ct. 2190, 210 L.Ed.2d 568 (2021) ........................... 21, 33

*United States v. Richardson,*
   418 U.S. 166 (1974) ................................................................. 21

*Wallace v. Tilley,*
   41 F.3d 296 (7th Cir. 1994) ........................................................ 14

*Warth v. Seldin,*
   422 U.S. 490 (1975) ................................................................. 28

*Whitmore v. Arkansas,*
   495 U.S. 149 (1990) ............................................................. 21, 34

*Wisconsin Right to Life, Inc. v. Schober,*
   366 F.3d 485 (7th Cir. 2004) ................................................... 20, 32

**Statutes**

28 U.S.C. § 1291 ......................................................................... 2

28 U.S.C. § 1331 ......................................................................... 1

28 U.S.C. § 1343(a)(3) ................................................................... 1

42 U.S.C. § 1983 ...................................................................... 1, 5

52 U.S.C. § 2112(a) ..................................................................... 36

52 U.S.C. § 20901 ....................................................................... 1

52 U.S.C. § 21081 ................................................................... 16, 35

52 U.S.C. § 21112 (a) ............................................................ 6, 14, 17

52 U.S.C. § 21112 (a)(2)(A)-(I) ................................................... 15, 34

52 U.S.C. § 21112 (a)(2)(B, F) ............................................................ 4

52 U.S.C. § 21112 (a)(2)(H) ............................................................ 13

52 U.S.C. §§ 21111-21112 ............................................................ 14

P.L. 107-252 ............................................................ 16, 35

U.S. Const. amend. I ............................................................ 29

Wis. Stat. § 5.05 ............................................................ 11

Wis. Stat. § 5.05(2m)(c)11 ............................................................ 10, 11

Wis. Stat. § 5.06(8) ............................................................ 10, 11, 12

Wis. Stat. § 5.06(9) ............................................................ 11

Wis. Stat. § 5.061 ............................................................ 10, 12

Wis. Stat. § 5.061(1) ............................................................ 16, 35

Wis. Stat. § 5.061(3) ............................................................ 16, 35

Wis. Stat. § 5.061(4) ............................................................ 16, 35, 36

**Rules**

Fed. R.Civ. P. 56 (c) ............................................................ 26

# JURISDICTIONAL STATEMENT

## I.    Jurisdiction of the District Court

The district court had jurisdiction under 28 U.S.C. § 1331 as a civil action arising under the laws of the United States as a federal question, 28 U.S.C. § 1343(a)(3) (allowing district courts to have original jurisdiction of any civil action authorized by law to be commenced by any person for the redress violations of a right or privilege secured by the U.S. Constitution, or any Act of Congress), and 42 U.S.C. § 1983 (allowing for starting a civil action for the deprivation of rights). The district court entered judgment on January 31, 2025. The Plaintiff-Appellants Wisconsin Voter Alliance, Ronald Heuer, and Kenneth Brown (collectively the "WVA") brought the district court action against members of the Wisconsin Elections Commission for violations under the Help America Vote Act of 2002 (HAVA), 52 U.S.C. § 20901, et seq., seeking declaratory and injunctive relief. Under HAVA, Congress mandated states to establish administrative based- complaint procedures to remedy citizen grievances regarding the administration of elections. The WVA filed HAVA complaints against the Wisconsin Elections Commission; however, the WEC refused to issue a decision and returned the complaints contending it had a conflict of interest. The WVA contended that there were no other procedural alternatives, particularly without a record and notably, without either a "no" decision or an adjudicated decision as HAVA mandates.

The WVA, Heuer, and Brown filed a motion for summary judgment. The district court denied the motion on grounds that the court had no jurisdiction to adjudicate the controversy concluding that they had "no standing." The court determined that no "injury in fact" existed. As for Heuer and Brown, according to the court, the fact they did not receive a decision from the WEC was "not enough." As for the WVA, the district court concluded the organization did not have organizational standing. Thus, the district court denied the WVA's motion for summary judgment for lack of standing.

## II.    Jurisdiction of the Court of Appeals

This appeal is taken from the final judgment and the decision and order pf the United States District Court for the Eastern District of Wisconsin entered by the Honorable William C. Griesbach. The entry of judgment occurred on January 31, 2025. (Doc. 44) from the court's Decision and Order Denying Plaintiffs' Motion for Summary Judgment. (APP. 1-10). The Notice of Appeal, filed on February 19, 2025 is within the 30 day time period for the filing of an appeal. Fed. R. Civ. App. P. Rule 4(a). (Doc. 45). This Court has jurisdiction to decide the district court's final decision and order under 28 U.S.C. § 1291. Section 1291 states that the "courts of appeals (other than the United States Court of Appeals for the Federal Circuit) shall have jurisdiction of appeals from all final decisions of the district courts of the United States…." As noted, the district court's decision dated January 31, 2025 is a final decision.

The Appellants filed their Notice of Appeal on February 19, 2025. (Doc. 45).

## ISSUES PRESENTED

I.   Wisconsin established a state mandated administrative complaint process under the federal Help America Vote Act. HAVA mandated the agency responsible for HAVA complaints render a decision. The Wisconsin Voter Alliance filed a HAVA complaint with the Wisconsin Elections Commission. As an issue-advocacy organization, the WVA utilizes available governmental processes or procedures to investigate or file complaints about governmental wrong-doing. The findings or adjudications allow the WVA organization to report back to its membership, or other elected or governmental officials, to encourage, suggest, or demand new laws, rules, regulations, or amendments to existing laws. The issue presented is:

> Whether the district court erred when it concluded an organization has no Article III organizational standing when a state's federally mandated administrative process failed to consider or render a decision under the Help America Vote Act that directly affected and interfered with the organization's core political activities.

II.   Under the federal Help America Vote Act, the state of Wisconsin is mandated to establish administrative procedures to adjudicate HAVA complaints. Here, the Wisconsin Elections Commission failed to reach a decision and returned filed HAVA complaints to two individual complainants. Both complainants are members of the Wisconsin Voter Alliance, and individually, are activists who engage in changing or enacting law.  WVA

3

members want to improve state processes and procedures regarding elections and related topics. WVA member file HAVA complaints as part of their core political activities.

> Whether the district court erred in denying Article III standing finding no "real" or "immediate harm" to individual activists who engage in governmental processes when as here, when federal law mandates a state agency to adjudicate a Help America Vote Act complaint but returns the complaint without consideration or decision.

## INTRODUCTION

The Help America Vote Act (HAVA) mandated states to establish certain procedures for citizens to seek the redress of grievances regarding HAVA election law violations, including ordering prescribed remedies if HAVA violations occurred, are occurring or will occur. 52 U.S.C. § 21112 (a)(2)(B, F). The Defendants-Appellees Wisconsin Elections Commission (WEC) (and its commissioners) is the designated Wisconsin governmental administrative entity responsible for adjudicating HAVA complaints and ordering prescribed remedies, if warranted.

The Wisconsin Voter Alliance, as an organization, and Ronald Heuer, and Kenneth Brown as individual activists who are members of the WVA, filed HAVA complaints with the WEC. The WVA is an issue-advocacy organization. The WVA uses governmental processes to produce findings to inform and educate its members and others the need to amend or create new laws, rules, or regulations related to errors or failures in election processes. Heuer and Brown, as WVA members and

individually, are activists that have similar objectives. The WVA, Heuer, and Brown complaints were against the WEC and its board of commissioners alleging HAVA violations.

The WEC, asserting that it wanted to avoid a conflict of interest, returned their respective HAVA complaints without consideration or a decision.[1]

The WEC did not issue a decision. The WEC did not make a referral to administrative law judge. The WEC left the WVA, Heuer and Brown without an applicable alternative method to adjudicate the filed HAVA complaints. The WEC denied the WVA, Heuer, and Brown their federally-protected rights under HAVA to have their HAVA complaint heard and adjudicated.

In their federal amended complaint, the WVA, Heuer, and Brown asserted that the WEC violated their rights to due process and to petition the state government for the redress of grievances. The WVA, Heuer, and Brown sought declaratory relief and injunctive relief under the federal Civil Rights Act, 42 U.S.C. § 1983, based on WEC's violations of their federally-protected rights.

---

[1] Notably, the WEC did not refer the underlying administrative complaints to an independent administrative law judge for adjudication. However, in at least one other similar HAVA matter, the WEC referred the complaint against a state agency to an administrative law judge for adjudication. Without regard to making a similar referral to an administrative law judge, the WEC, instead, suggested to the WVA, Heuer, and Brown to seek alternative methods without understanding the legal inapplicability of those alternatives.

The district court found, as the sole reason to deny WVA organizational standing, that the WVA had asserted that it diverted resources to file in federal court because of the WEC's failure to consider or decide the WVA's HAVA complaint. Doc. 43 at 9. Likewise, the district court denied Hauer and Brown Article III standing because, although having showed a particularized and actual injury, they did not claim the injury as "concrete." APP. 7. The court reasoned that even acknowledging the WEC failed to follow mandated procedures for HAVA complaints under 52 U.S.C. § 21112(a), the "harm" was "not enough." *Id.*

The WEC, Heuer, and Brown seek the reversal of the district court's decision in their appeal.

## STATEMENT OF THE CASE

### A. The Wisconsin Voter Alliance is an accomplished organization providing a variety of core activities as an issue-advocacy organization.

The Appellant Wisconsin Voter Alliance is a Wisconsin non-profit corporation focused on improving legal compliance in the subject area of elections. Doc. 15 at 3 (Amend. Compl. ¶5). As such, the WVA is an accomplished advocacy organization. Doc. 34-4 at 1–4. The WVA's core activities include, but are not limited to, protecting the rights of the organization, where applicable, its members, and those associated with the WVA who engage in promoting or engaging in other core activities of the organization. Doc. 34 at 2–4 (Heuer Decl. ¶¶1–8). While this may occur in a variety of ways, the WVA has a particular interest when governmental actions (at whatever level,

federal, state, county, or city, or by their respective officials) threaten or impede implied or expressed rights or privileges afforded to WVA members whether it be under the federal or state constitutions, federal or state laws, or federal or state regulations or all. *Id.* The WVA's core activities also include investigating, reporting and using all legally available resources, methods, procedures, or processes, including governmental administrative processes, or judicial means to achieve its objectives. *Id.*

To that end, WVA members or others associated with the WVA, will use available "tools," meaning, but not limited to, governmental processes and procedures, such as the Wisconsin Public Records Act, the federal Freedom of Information Act, or other state or federal laws, rules or regulations that provide procedures to obtain available governmental documents or data, or governmental administrative processes (*e.g.,* filing complaints or other methods to petition the governmental unit or body). *Id.*

Then, after the WVA makes its investigative findings, WVA can ensure election laws are observed, recommend or call its members to action so that certain laws, rules, or regulations may be amended or propose the enactment of new laws, rules, or regulations. *Id.* After such WVA actions, the WVA or its members or those associated with the WVA, will have at least the necessary information to inform public officials at all levels of government, or to testify before governmental committees, or to persuade elected officials, agencies, departments and others to effect change or to preserve the status quo. *Id.*

The WVA, as a service to other WVA members or individuals associated with the WVA, filed administrative complaints with and against the WEC for alleged HAVA violations. *Id.* (¶8). The WVA will do so, when such HAVA complaints align with the WVA's core activities and mission, and will provide assistance to others in filing such HAVA complaints. *Id.* The WVA also assists WVA members or those associated with the WVA to file HAVA complaints filed against the WEC—as Ronald Heuer and Kenneth Brown did. *Id.* (¶¶19–20).

**B. In October 2022, the WVA and Heuer filed a HAVA complaint against the WEC, which was *returned* without consideration and a "no decision" by WEC.**

The WVA and Ron Heuer, as complainants, on September 8, 2022, filed a verified HAVA complaint with the WEC. Doc. 15-1 at 1-11 (WEC Compl. Ex. A). The complaint was against the WEC itself and the WEC Commissioners individually. *Id.* Allegations asserted certain election issues with Wisconsin's statewide registration process and procedures, involving a third-party entity, the Electronic Registration Information Center. *Id.* The complaint also requested a hearing on the asserted allegations. *Id.*

On October 19, 2022, the WEC sent a letter to the WVA and Heuer returning their HAVA complaint without consideration or adjudication: "[the complaint against the WEC] is being returned without *consideration or dismissal* by the WEC." Doc. 15-3 at 1-2 (Amend. Comp. Ex. B). (emphasis added). With the Wisconsin Elections Commission's failure to consider and make a decision regarding the WVA-Heuer

HAVA complaint, the non-decision and non-adjudication of the issue without a hearing as requested, directly harmed the core activities and objectives of the WVA. *See* Doc. 34 at 2–4 (Heuer Decl. ¶¶1–8). It also directly harmed Heuer, as a HAVA complainant to have the issues presented adjudicated without a remedy against the WEC. *Id.* at 8–9 (Heuer Decl. ¶¶22–27).

## C. In October 2023, the WVA, Heuer, and Kenneth Brown filed another HAVA complaint against the WEC, which was returned with "no decision" by WEC.

A year later, once again, the WEC returned a WVA-Heuer-Brown HAVA complaint without consideration or a decision. On October 2, 2023, the WVA, Heuer, and WVA member Kenneth Brown filed another verified HAVA complaint regarding the identification-verification of military and oversea voters as absentee voters within the election process. Doc. 15-4 at 1-16 (also, 17-224 as attached exhibits to the HAVA complaint), (Amend. Compl. Ex. C). The HAVA complaint also requested a hearing. *Id.* Once again, the named respondent-defendants included the WEC, its commissioners, and administrator. *Id.*

Two days later, on October 4, 2023, the WEC sent a letter returning the HAVA complaint with the same notation as the WEC's October 2022 letter rejecting consideration or adjudication of the HAVA complaint: "[the complaint against the WEC] is being returned *without consideration or dismissal* by the WEC." Doc. 15-5 at 1-2 (Amend. Compl. Ex. D). WEC's letter to WVA dated October 4, 2023 was almost

verbatim to the WEC's letter to WVA received a year earlier in October 2022.

(*Compare* Doc. 15-3 with Doc. 15-5).

**D. The WEC's no-decisions regarding both the September 2022 and October 2023 HAVA complaints provided no procedure and no prescribed remedy for the WVA, Heuer, or Brown and did not refer the matters to an administrative law judge for adjudication as a viable resolution.**

The WEC has referred matters to an administrative law judge for adjudication, yet failed to do so here. The WEC asserts that it returned both 2022 and 2023 HAVA complaints without consideration or dismissal ostensibly to avoid conflicts of interest in deciding the matters before it. Doc. 15 at 8-9 (Amend. Compl. ¶¶37–38); Doc. 34 at 10(Heuer Decl. ¶¶33-34). Instead, in its own words, the WEC thought, *but did not know,* that the WVA, Heuer, and Brown should take their respective complaints and follow the path of either of two alternatives. Doc. 15 at 8-9 (Amend. Compl. ¶38); Doc. 15-2 at 1-2 (Amend. Compl. Ex. B); Doc. 15-4 at 1-2 (Amend. Compl. Ex. D); Doc. 34 at 11 (Heuer Decl. ¶36); Doc. 33 at 3 (Brown Decl. ¶7). As the WEC wrote, "It is also the Commissions *belief* that Wis. Stat. § 5.06(8) appellate rights *may* also be applied to Wis. Stat. § 5.061 'HAVA Complaints.'" Doc. 15-2 at 1-2 (Amend. Compl. Ex. B); Doc. 15-4 at 1-2 (Amend. Compl. Ex. D). Emphasis added.

The first recommended path involved filing a complaint with the district attorney for possible criminal prosecution under Wis. Stat. § 5.05(2m)(c)11. Doc. 15 at 8-9 (Amend. Compl. ¶¶ 38-40, referencing and quoting Ex. B and D). But, the WVA, Heuer, and Brown believe this provision relates only to criminal prosecutions of state

election law violations, not federal law violations under HAVA—which requires the WEC to initially find probable cause. Doc. 34 at 13 (Heuer Decl. ¶46); Doc. 33 at 3-4 (Brown Decl. ¶8). As the first line of the § 5.05 (2m)(c)11 reads: "If *the commission* finds that there is probable cause to believe that a violation under subd. 2. has occurred or is occurring…." Emphasis added. Doc. 15 at 8-9 (Amend. Comp. ¶38). And, the WVA, Heuer, and Brown believe Wis. Stat. § 5.05 is only for violations of state law, not federal law such as HAVA. Wis. Stat. § 5.05(2m)(c)2.a ("Any person may file a complaint with the commission alleging a violation of chs. 5 to 10 or 12"). Doc. 34 at 13 (Heuer Decl. ¶46); Doc. 33 at 3 (Brown Decl. ¶ 7). Therefore, the WVA, Heuer, and Brown concluded that this provision seeking criminal prosecution is not a "path" available to them for a civil HAVA complaint adjudication. Doc. 34 at 13 (Heuer Decl. ¶46); Doc. 33 at 3 (Brown Decl. ¶8).

Additionally, the WEC suggested a second "path" under Wis. Stat. § 5.06(8). This proposed second path caused the WVA, Heuer, and Brown further pause as a manner to obtain relief from their respective HAVA complaints because of the section's statutory language. Doc. 34 at 12-13 (Heuer Decl. ¶¶43-44); Doc. 33 at 3-4 (Brown Decl. ¶¶8, 10). The WVA, Heuer, and Brown believed that under Wis. Stat. § 5.06(9), the circuit court's authority is strictly limited and unavailing as they respectfully understood the application of the statutory language: "The court may not conduct a de novo proceeding with respect to any findings of fact or factual matters upon which the commission has made a determination, or could have made a

determination if the parties had properly presented the disputed matters to the commission for its consideration. The court shall summarily hear and determine all contested issues of law and shall affirm, reverse or modify the determination of the commission, according due weight to the experience, technical competence and specialized knowledge of the commission, pursuant to the applicable standards for review of agency decisions under s. 227.57." Doc. 15 at 9 (Amend. Compl. ¶39).

Moreover, the WEC appeared unsure whether appellate rights may be applied to HAVA complaints, writing to the complainants that (as accurately quoted): "It is also the Commission's belief that Wisc. Stat. § 5.06(8) appellate rights may also apply to Wis. Stat. § 5.061 'HAVA Complaints.'" Doc. 15 at 9-10 (Amend. Compl. ¶40); Doc. 34 at 13 (Heuer Decl. ¶48 (finding the lack of "belief" as "astounding").

Yet, while the WEC made "no decision" as to the WVA-Heuer or the WVA-Heuer-Brown complaints, the WEC did not refer the matters to administrative law judges through Wisconsin's Division of Hearings and Appeals. Doc. 15 at 10 (Amend. Compl. ¶41); Doc. 15-5 at 1-21 (Amend. Compl. Ex. E); Doc. 15-6 at 1-3 (Amend. Compl. Ex. F); Doc. 34 at 14-15 (Heuer Decl. ¶¶49-53. Notably, the WEC *has* referred matters to administrative law judges—which allows contested case processes to resolve matters brought before the WEC. *Id.* For example, on January 2, 2024, the WVA and Heuer filed a complaint with the WEC asserting a HAVA violation against the University of Wisconsin-Parkside, a state agency. *Id.* On February 29, 2024, the WEC referred the WVA-Heuer HAVA complaint against Wisconsin-Parkside to

Wisconsin's Division of Hearings and Appeals. *Id.* Once referred to the Division of Hearings and Appeals, the administrative process would allow for an administrative judge, discovery and a contested case hearing under applicable Wisconsin administrative law, if necessary (allowing for motion practice to alleviate the need for a formal hearing), and ultimately a decision. *Id.*

In addition, the WVA's amended complaint contended, as the accompanying declarations of the WVA and Heuer affirm, that because of WEC's "non-decision"—"without consideration or dismissal"—the evidence supporting the WVA complaints were not heard within 89 days, a requirement under 52 U.S.C. § 21112 (a)(2)(H). Doc. 15 at 11-12 (Amend. Compl. ¶46); Doc. 34 at 16 (Heuer Decl. ¶59). In addition, no dispute resolution occurred within 60 days when the requirements of § 21112(a)(2)(H) were not met. (Amend. Compl. ¶46); Doc. 34 at 16 (Heuer Decl. ¶60).

The WVA's amended complaint asserted that WEC's *return* of the September 2022 and October 2023 HAVA administrative complaint—without consideration, a decision, and a hearing as requested—violated their federally-protected rights under HAVA and the First Amendment's right to petition the government. This is because the WEC, by failing to consider, make a decision, or hold a requested hearing, offered no administrative relief—not providing an evidentiary hearing, and no prescribed remedies if a HAVA violation were to be found. The deprivation of the HAVA procedures as adopted by State statutory laws, and the HAVA remedies the complainants sought, in the first instance, led to the filing of the WVA's amended

complaint believing the WVA, Heuer and Brown are entitled to relief under HAVA, and the First Amendment.[2]  Accordingly, the WVA, Heuer, and Brown sought declaratory and injunctive relief. Doc. 15 at 26-27 (Amend. Comp. Prayer for Relief, ¶¶1-14.

## E. The district court outlined the statutory scheme regarding HAVA and the HAVA complaint process.

The district court outlined the statutory scheme regarding the Help America Vote Act under 52 U.S.C. §§ 21111-12. APP. 2 (Doc. 43 at 2 (Dec. and Or.). The court acknowledged that under § 21112(a) "any person who believes that there is a violation of" HAVA's administrative requirements subchapter, "may file a complaint" under the "State-based administrative complaint procedures." *Id.*

The district court also outlined HAVA's requirements for complaint procedures:

> (A) The procedures shall be uniform and nondiscriminatory.

---

[2] The Appellants also alleged violations under the Fourteenth Amendment's Due Process Clause. Case law appears to preclude that federal constitutional claim. *See GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357, 366 (7th Cir. 2019) ("There is no constitutional procedural due process right to state-mandated procedures."). *See also Pro–Eco, Inc. v. Bd. of Comm'rs,* 57 F.3d 505, 514 (7th Cir. 1995) (a violation of a state procedural statute does not offend the Constitution); *Wallace v. Tilley*, 41 F.3d 296, 301 (7th Cir. 1994) ("The denial of state procedures in and of itself does not create inadequate process under the federal constitution."); *Osteen v. Henley,* 13 F.3d 221, 225 (7th Cir. 1993) ("[A] violation of state law ... is not a denial of due process, even if the state law confers a procedural right."); *Coniston Corp. v. Vill. of Hoffman Estates, et al.*, 844 F.2d 461, 467 (7th Cir. 1988) ("A violation of state law is not a denial of due process....") (citations omitted).

(B)  Under the procedures, any person who believes that there is a violation of any provision of subchapter III (including a violation which has occurred, is occurring, or is about to occur) may file a complaint.

(C)  Any complaint filed under the procedures shall be in writing and notarized, and signed and sworn by the person filing the complaint.

The State may consolidate complaints filed under subparagraph (B).

(D) At the request of the complainant, there shall be a hearing on the record.

(E) If, under the procedures, the State determines that there is a violation of any provision of subchapter III, the State shall provide the appropriate remedy.

(F)  If, under the procedures, the State determines that there is no violation, the State shall dismiss the complaint and publish the results of the procedures.

(G) The State shall make a final determination with respect to a complaint prior to the expiration of the 90-day period which begins on the date the complaint is filed, unless the complainant consents to a longer period for making such a determination.

(H)  If the State fails to meet the deadline applicable under subparagraph (H), the complaint shall be resolved within 60 days under alternative dispute resolution procedures established for purposes of this section. The record and other materials from any proceedings conducted under the complaint procedures established under this section shall be made available for use under the alternative dispute resolution procedures.

52 U.S.C. § 21112(a)(2)(A)-(I). APP. 2.

Because Wisconsin received federal funding under HAVA,[3] it adopted the

HAVA mandated provisions:

- Whenever any person believes that a violation of Title III of P.L. 107-252[4] has occurred, is occurring, or is proposed to occur with respect to an election for national office in this state, that person may file a written, verified complaint with the commission. Wis. Stat. § 5.061(1).

- A complainant under sub. (1) or any of the complainants in a consolidated complaint under sub. (2) may request a hearing and the matter shall then be treated as a contested case under ch. 227, except that the commission *shall make a final determination* with respect to the merits of the complaint and issue a decision within 89 days of the time that the complaint or the earliest of any complaints was filed…. Wis. Stat. § 5.061(3) (emphasis added).

- If the commission finds the complaint to be without merit, it *shall issue a decision* dismissing the complaint. Wis. Stat. § 5.061(4) (emphasis added).

- If the commission finds that the violation alleged in the complaint has occurred, is occurring, or is proposed to occur, the commission *shall order appropriate relief*, except that the commission shall not issue any order under this subsection affecting the right of any person to hold an elective office or affecting the canvass of an election on or after the date of that election. Wis. Stat. § 5.061(4) (emphasis added).

## F. The district court dismissed the amended complaint for lack of standing, and denied the Appellants motion for summary judgment without reaching the merits.

The district court dismissed the Appellants complaint for lack of standing and

---

[3] Doc. 15 at 12 (Amend. Compl. ¶50); Doc. 34 at 17 (Heuer Decl. ¶64).
[4] Title III governs voting system standards. 52 U.S.C. § 21081.

did not reach the merits of their summary judgment motion. APP. 5-6. The court found that the WVA did not have organizational standing because the WEC actions did not interfere with the WVA's core political activities. APP. 9. Hence, the court determined the WVA failed to show that it suffered an injury in fact. *Id.* The court focused on allegations regarding the diversion of resources. *Id.* However, as a part of the summary judgment motion process, the court apparently did not consider Appellant Heuer's declaration that further explained the core activities of the WEC as first alleged in the Amended Compliant. *See e.g.,* Doc. 15 at 3-4 (Amend. Compl. at ¶ 5).

Likewise, the district court, while conceding the Appellants Heuer and Brown had shown "their claimed injury is particularized and actual—each was privy to a WEC proceeding that resulted in the WEC issuing a 'no decision' response letter," announced that Heuer and Brown failed to show that "their claimed injury is concrete." APP. 7 The court concluded that "'[a] citizen may not sue based only on an 'asserted right to have the Government act in accordance with law'" quoting *Food and Drug Administration v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024). Because the court concluded that Heuer's and Brown's only "harm" was that the WEC did not follow 52 U.S.C. § 21112(a), "[t]hat [was] not enough." APP. 8.

This appeal followed as the WVA, Heuer, and Brown believe the district court erred in determining they do not have standing to pursue their federal court claims.

## SUMMARY OF THE ARGUMENT

The Appellants Wisconsin Voter Alliance, Ron Heuer, and Kenneth Brown have Article III standing. The WVA has organizational standing because when the Wisconsin Elections Commission failed to consider or decide the WVA's Help America Vote Act complaint, it denied the WVA not only mandated HAVA procedures under State HAVA procedures, but also the WVA's right to petition the government for the redress of grievances. The right to petition is a cognizable concrete injury. Notably, the WEC's failure to consider and decide the HAVA complaint (and returning it to the WEC), interfered with the WVA's core political activities as it relates to election processes and procedures, and the integrity of those processes.

In this regard, the WVA core activities include using all available governmental "tools," whether under Wisconsin's Public Records Act, or through administrative filings, the results of which allow for the WVA to call its members to action, seek legislative recourse through the amending of existing law or creating new law, or testifying before the legislature for it to act. The WEC's actions interfered with those core activities. Therefore, the WEC has organizational standing. It also has associational standing.

Likewise, Appellants Heuer and Brown have Article III standing. The district court, while conceding they showed a particularized and actual injury, it nonetheless concluded that they failed to show a "concrete" injury. But, while it is true in part,

that part of their claim and thus, their injury is inclusive of the WEC's failure to follow the mandates of HAVA and State HAVA procedures to render a decision, it does not end there. The WEC did not consider Heuer's or Brown's HAVA complaints, and did not hold a hearing as requested. The WEC returned the complaints to Heuer and Brown. The WEC's failure to adjudicate the complaint, hold a hearing, and return the complaint extinguished the constitutional and statutory right to petition. Heuer and Brown have a concrete injury.

The WVA, Heuer, and Brown are entitled to have their respective HAVA complaints against WEC adjudicated. Therefore, the district court's decision should be reversed and the matter remanded for further proceedings consistent with this Court's decision and opinion.

## ARGUMENT

I.   **The Appellant Wisconsin Voter Alliance has Article III organizational standing because of the state agency's failure to consider and decide a Help America Vote Act complaint as mandated under HAVA, which directly affected and interfered with the organization's core activities.**

### A.   Review of a complaint's dismissal for lack of standing is *de novo* and clear error for facts.

This Court will review a district court's dismissal of a complaint for lack of standing *de novo. Payton v. Cnty. of Kane*, 308 F.3d 673, 676 (7th Cir. 2002) citing *Rifkin v. Bear Stearns & Co., Inc.,* 248 F.3d 628, 631 (7th Cir. 2001). While reviewing legal questions *de novo,* this Court will review any factual determinations for clear error.

*Com. Cause Indiana v. Lawson*, 937 F.3d 944, 949 (7th Cir. 2019) citing *Wisconsin Right to Life, Inc. v. Schober*, 366 F.3d 485, 489 (7th Cir. 2004).

> **B. Article III standing for organizations allows suit for injuries sustained and the WVA meets those standards as an issue-advocacy organization in which state inaction affected core WVA activities causing imminent harm**.

Article III, § 2 of the Constitution limits the jurisdiction of federal courts to cases or controversies. *Arizonans for Official English v. Arizona*, 520 U.S. 43, 64 (1997). The standing requirements imposed by the Constitution are three-fold. A litigant must show (1) that she "suffered a concrete and particularized injury that is either actual or imminent"; (2) "that the injury is fairly traceable to the defendant"; and (3) that a favorable decision will likely redress the injury. *Milwaukee Police Assn. v. Flynn*, 863 F.3d 636, 639 (7th Cir. 2017) quoting *Massachusetts v. EPA*, 549 U.S. 497, 517 (2007) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 1992)).

An injury in fact is one that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Bost v. Illinois State Bd. of Elections*, 114 F.4th 634, 639–40 (7th Cir. 2024) quoting *Lujan*, 504 U.S. at 560. To be considered "concrete," an injury must be "real, and not abstract," meaning it "must actually exist." *Id.* quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016). 1540. "A concrete harm is usually physical or monetary but can also include various intangible harms." *Id.,* citing *TransUnion v. Ramirez*, 594 U.S. 413, 425, 141 S.Ct. 2190, 210 L.Ed.2d 568 (2021).

This Court has explained that for an injury to be "particularized," it must affect the plaintiff "in a personal and individual way." *Id.,* quoting *Spokeo*, 578 U.S. at 339. "As the Supreme Court has explained, such an injury must be personal, individual, and distinct, not general and undifferentiated." *Id,* citing *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990) ("The complainant must allege an injury to himself that is distinct and palpable.") (internal citations omitted); *United States v. Richardson*, 418 U.S. 166, 176–78 (1974) (declining to find standing for a "generalized grievance" when it is "plainly undifferentiated and common to all members of the public") (internal citations omitted). Notably, Only declaratory and injunctive relief is sought. Doc. 15 at 26-27 (Amend. Compl. Prayer for Relief, ¶¶ 1-14).

1. **Organizational standing can be based on core activities including educating its members and public, and reporting and recommending changes to the law to legislators and other governmental officials**

To assert Article III standing, the WVA must show that it was "under an actual or imminent threat of suffering a concrete and particularized 'injury in fact'; that this injury is fairly traceable to the [defendant-Appellee's] conduct; and that it is likely that a favorable judicial decision will prevent or redress the injury. *Com. Cause Indiana*, 937 F.3d at 949, quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). *See also, Food and Drug Administration v. All. for Hippocratic Med.*, 602 U.S. 367, 393–94 (2024) ("[O]rganizations may have standing 'to sue on their own behalf for injuries they have sustained.'" Citation omitted).

As the U.S. Supreme Court recently opined in *Hippocratic Med.*, for an

organization to have standing, it must show more than a setback to an organization's

"abstract social interests:"

> Like an individual, an organization may not establish standing
> simply based on the "intensity of the litigant's interest" or because
> of strong opposition to the government's conduct,…"no matter
> how longstanding the interest and no matter how qualified the
> organization."…A plaintiff must show "far more than simply a
> setback to the organization's abstract social interests.

*Hippocratic Med.*, 602 U.S. at 394 (citations omitted).

Indeed, the Supreme Court opined that more is needed than just the diversion

of resources in response to a defendant's actions. *Id.* at 395 (citing *Havens Realty Corp.

v. Coleman*, 455 U.S. 363 (1982). Organizational standing exists when the defendant's

actions directly affect and interfere with the organization's "core business activities."

*Id.* at 395 (citing *Havens,* 455 U.S. at 368).

As the Supreme Court explained, the relevant question in *Havens* was to

determine if a housing counseling organization had standing to bring a claim under

the Fair Housing Act. Havens provided false information to the counseling

organization to its black employees about apartment availability (racial steering). *Id.,*

citing *Havens,* at 368, 378.  Important to the Supreme Court's analysis; not only was

the housing counseling organization an issue-advocacy organization, but it operated a

housing counseling service. *Id.* Hence, the Havens actions of providing false

information "directly affected and interfered with [the organization's] core business activities…." *Id.*

In the WVA's amended complaint, the WVA identified itself as an issue-advocacy organization that uses governmental processes and procedures related to the integrity of elections, including "that public [election] officials act in accordance with the law." Doc. 15 at 2 (Amend. Compl. ¶ 1). The result of the WAV's activities to use governmental processes and procedures is to meet one of the organization's objectives to educate WVA members[5] and the public, as a call to action:

> The Wisconsin Voter Alliance is a statewide organization with members who seek to ensure, as part of their association objectives, public confidence in the integrity of Wisconsin's elections, in election results and election systems, processes, procedures, and enforcement, and that public officials act in accordance with the law in exercising their obligations to the people of the State of Wisconsin and educate its members and the public about available methods to meet these objectives.

Doc. 15 at 3 (Amend. Compl. ¶ 5); *see also,* Doc. 34 at 2 (Hauer Decl. ¶ 2).

The WVA also uses other governmental avenues, referred to as "governmental tools," such as Wisconsin's Public Records Act or administrative processes (such as HAVA complaints filed with the WEC). In other words, the WVA has utilized the HAVA complaint process—in the past, the present, and the future[6]—as a tool to

---

[5] Heuer and Brown are WVA members.

[6] As the WVA has declared, "The Wisconsin Voter Alliance has an institutional stake in the administrative complaints filed with the Wisconsin Elections Commission under HAVA to determine whether or not a violation of the federal law occurred. Without that adjudication, it is the WVA's belief that the alleged violation is on-going.

instruct or report to its members to take action, or recommendations to governmental

election or appointed officials to take action. This is especially necessary when

incidents occur involving election processes or related acts when governmental

actions threaten or impede their rights related to election processes or procedures:[7]

> The Wisconsin Voter Alliance also works to protect the rights of its members whenever laws, statutes, rules, regulations, or government actions that threaten or impede implied or expressed rights or privileges afforded to them under our constitutions or laws or both and educate its members and the public to meet these objectives. This includes but is not limited to, using available governmental tools, such as the Public Records Act or governmental administrative processes (filing complaints).

Doc. 15 at 3–4 (Amend. Compl. ¶ 5).

---

Without a decision, corrective action by the agency, election official, the WVA, or others, cannot be taken. This would include, but is not limited to, recommending, reporting, or developing legislation, rules, regulations, or guidelines to ensure the violation ceases, or does not occur again in the future." Doc. 34 at 6 (Heuer Decl. ¶17).

[7] Even on the federal level, government impediments to the election process is not a hypothetical. Regardless, the WVA's core activities include its selected methods of identifying whether the state of Wisconsin is violating election laws, and how best to address the issue to alert others through reporting or testifying to its members or legislators, to take appropriate action such as encouraging changes to the laws. Under the factual circumstances here, the WEC thought the best methodology was through the through the HAVA complaint process. See e.g., "A coalition of voting rights organizations filed a lawsuit in the U.S. District Court for the District of Columbia to challenge President Trump's unlawful executive order on voting that attempts to seize the power to set voter registration rules from Congress and the states, and doing so in a way that would violate federal law and the Constitution if carried out by the Election Assistance Commission (EAC)." "Voting Rights Groups Challenge Trump's Recent Executive Order," https://www.aclu.org/press-releases/voting-rights-groups-challenge-trumps-recent-executive-order (last visited Apr. 1, 2025).

Similarly, Ron Heuer, as WVA's president, identified the "core activities" that ultimately not only involves its members and the public generally as a core organizational activity, but also public officials to correct administrative errors or recommend new laws through legislative means:

> Core activities include educating its members and the public to meet the organization's objectives, and public officials of, for example, revealing possible misconduct of public officials (such as when acting contrary to the law or regulations), or the need to correct administratively or recommending new laws or amending laws via legislative action.

Doc. 34 at 2 (Heuer Decl. ¶ 2).

How the WVA accomplishes its objectives as an advocacy organization is seen through its "methodology," which includes reports, legislative testimony, and speaking at public events:

> The methodology used includes drafting of reports, testifying before governmental officials or units of government, legislative committees, public events, or events organized by the Wisconsin Voters Alliance or other parties.

*Id.* Doc. 34 at 3 (*See e.g.*, Heuer Decl. Exhibit 4[8], Doc. 34-4 at 1–4).

The WVA explained to the district court how the WEC's failure to consider or decide the WVA's HAVA complaint by interfering with its core activities. As the WVA explained through its president Heuer, the lack of a WEC decision interfered

---

[8] "Examples of [WVA] Litigation, Legislature and Other Activities, 2020-2024."

with reporting to the legislature of the need to amend laws or create new laws or rules

or regulations:

> Without a Wisconsin Elections Commission decision of the Wisconsin Voter Alliance HAVA complaint, corrective action by the agency, election official or others, cannot be taken. This would interfere with the WVA's core objectives that include, but is not limited to, recommending, reporting, amending or developing legislation, rules, regulations, or guidelines to ensure the violation ceases, or does not occur again in the future in a similar form.

Doc. 34 at 4 (Heuer Decl. ¶ 16).[9]

The district court did not explore the WVA's core activities, and how the WEC

interfered with those activities. The WVA initiated the HAVA complaint against the

WEC because of alleged wrongful violations of the law. The allegations asserted

---

[9] The amended complaint also noted that the commencement of federal litigation, necessitated because the WEC not only failed to act as mandated under HAVA interfering with the WVA's core activities, but also provided no alternative process, such as an administrative judge to adjudicate the dispute between the parties (as the WEC had done in the past). *See e.g.,* Doc. 15 at 7–8, 19, 23 (Amend. Compl. ¶¶ 30, 34, 90, 118). However, Heuer's declaration testimony elaborated the WEC's interference and the core political activities of the WVA as explained in ¶ 5 of its amended complaint. In short, Heuer's declaration fully explained the allegations asserted in the amended complaint for purposes of summary judgment motions under Fed. R.Civ. P. 56 (c):

> (1) Supporting Factual Positions. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;….

election law issues under HAVA with the WEC's use of Wisconsin's statewide registration process and procedures that involved a third-party entity, the Electronic Registration Information Center. Doc. 15-0 at 6 (Amend. Compl. ¶¶26–27), Doc. 15-1 at 1–11 (Amend. Compl. Exhibit A); Doc. 34 at 9–10 (Heuer Decl. ¶¶ 29–30). The WEC's failure to consider and decide the HAVA complaint did not allow the WVA to determine if a law had been violated.

Even if the WEC reached a decision that no election law under HAVA had been violated, a decision would have allowed for the WVA to take certain actions. After a WEC decision, the WVA would have been able to report to its members and governmental elected and appointed officials about the WEC findings and take action such as recommend the amending of existing laws or creating new law, or rules or regulations relevant to the WVA's underlying allegations against the WEC's use of the statewide registration process.

The district court concluded "that the WVA has [not shown it] has suffered an injury in fact." APP. 9. While the HAVA compliant process is available to the general public, it was the WVA that filed the complaint. The allegations are particular to the WVA in support of a HAVA violation by the WEC.

Notably, if a person does not file a HAVA complaint with the WEC, there is no harm to complain of. Therefore, there is no "generalized" public harm. The WEC do not seek "to vindicate the public interest." *All. for Hippocratic Med.*, 602 U.S. at 382. Because the WEC provided no hearing, no decision, and *returned* the HAVA

complaint, the WEC had no adequate procedure to adjudicate WVA's HAVA complaint. Therefore, the WEC violated the WVA's rights.

The WVA is not just alleging bare procedural violations. *See, Spokeo,* 578 U.S. at 340. There exists a First Amendment claim regarding the right to petition. HAVA commands the right to petition be protected by the processes the Act commands the state to follow. Wisconsin adopted the HAVA mandates, as it must, and then denied the alleged constitutional protection.

As this Court has found, "[a]n injury in fact is an 'invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical.'" *Nettles v. Midland Funding LLC,* 983 F.3d 896, 899 (7th Cir. 2020) (citation omitted; quotation marks omitted). "A concrete injury is a real injury—that is, one that actually exists, though intangible harms as well as tangible harms may qualify." *Id.*

Meanwhile, the WEC has in the past adjudicated HAVA complaints as it must under HAVA, or at the very least had an administrative law judge adjudicate the HAVA issue(s). *See e.g.,* Doc. 34 at 14 (Heuer Decl. ¶¶49-50). Indeed, "[w]hether an association has standing to invoke the court's remedial powers on behalf of its members depends in substantial measure on the nature of the relief sought." *Warth v. Seldin,* 422 U.S. 490, 515 (1975). Here, because the WVA is only seeking declaratory and injunctive relief, it is likely that individual members will not be required to participate in the lawsuit. *See Duncan Place Owners Ass'n v. Danze, Inc.,* No. 15 C 01662,

2015 WL 5445024, at *3 (N.D. Ill. Sept. 15, 2015) ("Because declaratory, injunctive, or other prospective relief will usually inure to the benefit of the members[,] actually injured individualized proof of damages is often unnecessary, raising no need for member participation in a lawsuit prosecuted by a representative association.") (internal quotations omitted).

Here, the WEC ignored recent and past practices and left the WVA without a process to administratively (or judicially) adjudicate its complaint, without an opportunity to create a record through a hearing, and ultimately without a final decision. HAVA created mandated state HAVA complaint procedures. And within those procedures, WVA is entitled to a WEC decision on the WVA's HAVA allegations against WEC. The WEC failed to provide the WVA a decision within those mandated procedures and prescribed remedies.

The First Amendment protects the right to petition the government for the redress of grievances. U.S. Const. amend. I. In this context, indeed, "[t]here is, of course, a constitutional right to address complaints to state officials." *See Bridges v. Gilbert,* 557 F.3d 541, 553 (7th Cir. 2009). And while one court opined that "the right to petition the government for redress of grievances 'does not require that a government official respond to the grievance.'" *Jones v. Brown,* 300 F.Supp.2d 674, 679 (N.D. Ind. 2003), under HAVA and under Wisconsin HAVA procedural guarantees, the WEC must respond to HAVA complaints. Here, the WEC did not.

Indeed, the WVA did suffer an injury in fact, "concrete and particularized," to the WVA. *Compare,* APP. 9.[10] And since the WVA filed its HAVA complaint with the WEC, the governmental agency responsible for adjudicating HAVA complaints, the WVA's injury is "fairly traceable to the defendant [Appellees]." Finally, because the WVA is seeking declaratory and injunctive relief against the WEC, a favorable decision will redress the injury. *See,* Doc. 15, 26–27 (Amend. Compl. Prayer for Relief, ¶¶1–14). The district court, by issuing a declaratory and injunctive relief, can redress the claims as asserted. Declaring the WEC violated the First Amendment rights of the WVA, it can enjoin the WEC from violating thus rights, thereby, resulting in the WEC adjudicating the WVA HAVA complaint, as anticipated under both HAVA and Wisconsin statutory procedural law.

### 2. The WVA also has associational standing.

The WVA also has associational standing. The Supreme Court has explained, associational standing requires factual allegations showing that (1) at least one of the association's members would otherwise have standing to sue in their own right; (2) the

---

[10] The Supreme Court has opined that "an organization that *has not suffered a concrete injury* caused by a defendant's action cannot spend its way into standing simply by expending money to gather information and advocate against the defendant's action. An organization cannot manufacture its own standing in that way." *All. for Hippocratic Med.*, 602 U.S. at 394. Emphasis added. This is not WVA's case. The WVA is more than just "advocating against the defendant's action." Its purpose is also to report, testify (before the legislature), and recommend change to laws and to direct others to take action accordingly. The WVA's use of the HAVA complaint process guaranteed a decision; the WEC did not. Hence, the WVA did suffer a concrete injury in the first instance.

interests sought to be protected by the lawsuit are germane to the association's purpose; and (3) neither the claims asserted nor the relief sought requires the participation of individual members in the lawsuit. *Parents Protecting Our Children, UA v. Eau Claire Area Sch. Dist., Wisconsin*, 95 F.4th 501, 505 (7th Cir. 2024), *cert. denied*, 145 S. Ct. 14 (2024) citing *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).

As explained below, WVA individual members Ron Heuer and Kenneth Brown also filed HAVA complaints with the WEC. Both received the same response as did the WVA. The WEC did not consider or decided the allegations of their respective complaints. As both Heuer and Brown testified, each have a "have a personal stake in the administrative complaints I filed with the Wisconsin Elections Commission under HAVA to determine whether or not a violation of the federal law occurred. Without that adjudication, it is my belief that the alleged violation is on-going. Without a decision, corrective action by the agency, election official, myself, or others, cannot be taken. This would include, but is not limited to, recommending, reporting, or developing legislation, rules, regulations, or guidelines to ensure the violation ceases, or does not occur again in the future." *See* Doc. 34 at 8 (Heuer Decl. ¶23); Doc. 33 at 3 (Brown Decl. ¶5).

The WEC's failure to issue a decision is an injury in fact and a concrete harm, aligned with the purpose of the WVA. And since, as contended, the WVA has organizational standing, neither of Heuer's or Brown's claims asserted nor the relief

sought requires the participation of individual members in the lawsuit. Therefore, the

WVA also has associational standing.

II. **Individual activists, Appellants Ron Heuer and Kenneth Brown have Article III standing because the WEC, by not considering or deciding their HAVA complaints when HAVA mandates a decision be made, have identified a "real" or "immediate harm."**

A. **Review of a complaint's dismissal for lack of standing is *de novo* and clear error for facts.**

This Court will review a district court's dismissal of a complaint for lack of

standing *de novo. Payton,* 308 F.3d at 676 citing *Rifkin,* 248 F.3d at 631. While reviewing

legal questions *de novo,* this Court will review any factual determinations for clear error.

*Com. Cause Indiana,* 937 F.3d at 949 citing *Wisconsin Right to Life, Inc.,* 366 F.3d at 489.

B. **Article III standing for individuals requires the establishment of an injury in fact, traceable to the defendant, and redressable with a favorable district court decision.**

The Constitution gives federal courts the power to adjudicate only genuine

"Cases" and "Controversies." Art. III, § 2. *California v. Texas*, 593 U.S. 659, 668–69

(2021). "That power includes the requirement that litigants have standing. A plaintiff

has standing only if he can 'allege personal injury fairly traceable to the defendant's

allegedly unlawful conduct and likely to be redressed by the requested relief.'" *Id.,*

citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006) (internal quotation marks

omitted); *see also Lujan*, 504 U.S. at 560–561. In short, to establish standing, a plaintiff

must show: (1) an injury-in-fact; (2) that is fairly traceable to the defendant; and (3) likely to be redressed by a favorable judicial decision. *Lujan*, 504 U.S. at 560–61.

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.' " *Spokeo*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 560). An imminent and substantial risk of future harm is sufficient for the purposes of injunctive relief. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 435 (2021). Only declaratory and injunctive relief is sought. Doc. 15 at 26-27 (Amend. Compl. Prayer for Relief, ¶¶ 1-14).

> ### C. Heuer and Brown, because they have shown their injury as particularized and actual, as conceded by the district court, meet the requirement of a concrete injufy; so; their complaint of HAVA violations should have been adjudcicated.

The right to speak and the right to petition are "cognate rights." *Borough of Duryea v. Guarnieri,* 564 U.S. 379, 388 (2011) (quoting *Thomas v. Collins*, 323 U.S. 516, 530 (1945)); see also *id.* at 390 (referring to a petition as a form of speech). "The right to petition allows citizens to express their ideas, hopes, and concerns to their government and their elected representatives .... [B]oth speech and petition advance personal expression, although the right to petition is generally concerned with expression directed to the government seeking redress of a grievance." *Id.* According to HAVA, since Wisconsin has designated the WEC to decide HAVA complaints, the failure of the WEC to consider or decide the WVA's complaint is legally fatal. No one

else is authorized to adjudicate the HAVE complaint. Heuer and Brown have asserted a concrete injury. *Speech First, Inc. v. Cartwright*, 32 F.4th 1110, 1119 (11th Cir. 2022) ("Deprivation of a First Amendment right can undoubtedly qualify as a concrete injury…."). Their right to petition for the redress of grievances, protected under both HAVA and Wisconsin law, has been eliminated by the WEC regarding the HAVA complaints. *See, Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990).

Under 52 U.S.C. § 21112(a)(2)(A)-(I), federal law established the state procedures regarding a HAVA complaint:

(I)   The procedures shall be uniform and nondiscriminatory.

(J)   Under the procedures, any person who believes that there is a violation of any provision of subchapter III (including a violation which has occurred, is occurring, or is about to occur) may file a complaint.

(K)  Any complaint filed under the procedures shall be in writing and notarized, and signed and sworn by the person filing the complaint.

The State may consolidate complaints filed under subparagraph (B).

(L)  At the request of the complainant, there shall be a hearing on the record.

(M) If, under the procedures, the State determines that there is a violation of any provision of subchapter III, the State shall provide the appropriate remedy.

(N) If, under the procedures, the State determines that there is no violation, the State shall dismiss the complaint and publish the results of the procedures.

(O) The State shall make a final determination with respect to a complaint prior to the expiration of the 90-day period which begins on the date the complaint is filed, unless the complainant consents to a longer period for making such a determination.

(P)  If the State fails to meet the deadline applicable under subparagraph (H), the complaint shall be resolved within 60 days under alternative dispute resolution procedures established for purposes of this section. The record and other materials from any proceedings conducted under the complaint procedures established under this section shall be made available for use under the alternative dispute resolution procedures.

Because Wisconsin received federal funding under HAVA,[11] it adopted the HAVA mandated provisions:

- Whenever any person believes that a violation of Title III of P.L. 107-252[12] has occurred, is occurring, or is proposed to occur with respect to an election for national office in this state, that person may file a written, verified complaint with the commission. Wis. Stat. § 5.061(1).

- A complainant under sub. (1) or any of the complainants in a consolidated complaint under sub. (2) may request a hearing and the matter shall then be treated as a contested case under ch. 227, except that the commission *shall make a final determination* with respect to the merits of the complaint and issue a decision within 89 days of the time that the complaint or the earliest of any complaints was filed…. Wis. Stat. § 5.061(3) (emphasis added).

- If the commission finds the complaint to be without merit, it *shall issue a decision* dismissing the complaint. Wis. Stat. § 5.061(4) (emphasis added).

- If the commission finds that the violation alleged in the complaint has occurred, is occurring, or is proposed to occur, the

[11] Doc. 15 at 12 (Amend. Compl. ¶50); Doc. 34 at 17 (Heuer Decl. ¶64).
[12] Title III governs voting system standards. 52 U.S.C. § 21081.

> commission *shall order appropriate relief*, except that the commission shall not issue any order under this subsection affecting the right of any person to hold an elective office or affecting the canvass of an election on or after the date of that election. Wis. Stat. § 5.061(4) (emphasis added).

The district court, while conceding Heuer and Brown have "shown their claimed injury is particularized and actual,"[13] concluded that in their federal complaint that "[i]n essence, Heuer and Brown argue they were harmed because the WEC has not followed 52 U.S.C. § 2112(a). That is not enough." APP. 8. While true in part, that was not the entire scope of the allegations alleged. Heur and Brown are not just alleging bare procedural violations. *See, Spokeo,* 578 U.S. at 340. As previously noted, there exists a First Amendment claim regarding the right to petition. HAVA commands the right to petition be protected by the processes the Act commands the state to follow. Wisconsin adopted the HAVA mandates, as it must, and then denied the alleged constitutional protection. These facts should be "enough" for a HAVA complaint.

Notably, if a person does not file a HAVA complaint with the WEC, there is no harm to complain of. Therefore, there is no "generalized" public harm. They do not seek "to vindicate the public interest." *All. for Hippocratic Med.*, 602 U.S. at 382. Like the WVA, Heuer and Brown received no hearing, no decision, and no adequate remedy regarding *their* HAVA complaints. The right to petition has been denied.

---

[13] APP. 7.

As this Court has found, "[a]n injury in fact is an 'invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical.'" *Nettles v. Midland Funding LLC*, 983 F.3d 896, 899 (7th Cir. 2020) (citation omitted; quotation marks omitted). "A concrete injury is a real injury—that is, one that actually exists, though intangible harms as well as tangible harms may qualify." *Id.* The district court's reliance of a single quote from *All. for Hippocratic Med.*, that "[a] citizen may not sue based only on an 'asserted right to have the Government act in accordance with law'", is not the complete quote from *Allen v. Wright*, 468 U.S. 737, 754 (1984) and adequately showing the meaning of the U.S. Supreme Court's stated principle. 602 U.S. at 381.

In *Allen*, the Supreme Court opined that "This Court has repeatedly held that an asserted right to have the Government act in accordance with law is not sufficient, *standing alone*, to confer jurisdiction on a federal court." *Allen*, 468 U.S. at 754. Heuer and Brown, as well as the WVA, have asserted that while the WEC failed to follow HAVA procedural mandates under state law, they alleged the failure to do so violated a First Amendment right to petition the government for the redress of grievances which *is a concrete harm.*

Therefore, the district court did err in finding Heuer and Brown (and the WVA) failed to establish Article III standing for lack of evidence of a concrete harm.

The remaining general requirements to establish Article III standing are that the injury is fairly traceable to the defendant, here, the Appellee WEC; and is likely to

be redressed by a favorable judicial decision, the Heuer and Brown can meet those requirements. *Lujan*, 504 U.S. at 560–61.

There should be little question that the WEC caused the injury complained of. Heuer and Brown were not only deprived of the protected procedures under federal law mandates as HAVA provides, but also under state procedures. The WEC failed to *consider and decide* the HAVA complaints (returned in whole). The WEC deprived Heuer and Brown of their right to petition. The actions of the WEC caused the harm- and caused the injury to Heuer and Brown.

The district court, by issuing a declaratory and injunctive relief, could have redressed the claims as asserted. The court has the power to declare that the WEC violated the First Amendment rights of Heuer and Brown. The court can enjoin the WEC from continuing the violation of these rights by requiring WEC to adjudicate the HAVA complaints, as required under both HAVA and Wisconsin law.

## CONCLUSION

The district court judgement, decision and order should be reversed. This matter should be remanded for further adjudication consistent with this Court's decision.

Dated: April 1, 2025

*Electronically Signed by Erick G. Kaardal*
Erick G. Kaardal, No. 1035141
Mohrman, Kaardal & Erickson, P.A.
150 South Fifth Street, Suite 3100
Minneapolis, Minnesota 55402
Telephone: 612-341-1074
Email: kaardal@mklaw.com
*Attorneys for Plaintiffs-Appellants*

# CERTIFICATE OF COMPLIANCE
## WITH FED. R. APP. P. 32 (g)

The undersigned certifies that the Brief submitted herein contains 9,923 words and complies with the type/volume limitations of the Federal Rules of Appellate Procedure 32(g). This Brief was prepared using a proportionally spaced typeface of 14-point. The word count is stated in reliance on Microsoft 365, the word processing system used to prepare this Brief.

 /s/Erick G. Kaardal
Erick G. Kaardal

## APPELLANT COUNSEL'S AFFIRMATIVE STATEMENT

I, Erick G. Kaardal, affirm that I have complied with Circuit Court Rule 30(a) and (b) to the best of my knowledge.

/s/Erick G. Kaardal
Erick G. Kaardal

## CERTIFICATE OF SERVICE

I hereby certify that on April 1, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: April 1, 2025

/s/Erick G. Kaardal
Erick G. Kaardal

# No. 25-1279

# United States Court Of Appeals For The Seventh Circuit
_____

## WISCONSIN VOTERS ALLIANCE, et al.,

Plaintiffs-Appellants,

v.

## DON M. MILLIS, et al.,

Defendants-Appellees.
_____

On Appeal from the U.S. District Court for the Eastern District of Wisconsin,
Case No: 1:23-cv-01416-WCG
District Judge William C. Griesbach
Date NOA filed in District Court: 2/19/2025
_____

# APPELLANTS' APPENDIX
_____

Erick G. Kaardal, (WI) 1035141
Mohrman, Kaardal & Erickson, P.A.
150 South Fifth Street, Suite 3100
Minneapolis, Minnesota 55402
Telephone: 612-341-1074
Email: kaardal@mklaw.com
*Attorneys for Plaintiffs-Appellants*

April 1, 2025

# APPENDIX INDEX

Decision and Order Denying Plaintiffs' Motion for Summary Judgment, USDC-WI(E) 23-c-1416, dated January 31, 2025 .................................................. APP. 1

Judgment, USDC-WI(E) 23-c-1416, dated January 31, 2025 ............................. APP. 11

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

WISCONSIN VOTER ALLIANCE, et al.,

        Plaintiffs,

      v.                            Case No. 23-C-1416

DON M. MILLIS, et al.,

        Defendants.

## DECISION AND ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

On October 25, 2023, Plaintiffs Wisconsin Voter Alliance (WVA), Ron Heuer, and Kenneth Brown brought this action under 42 U.S.C. § 1983 against the members of the Wisconsin Elections Commission (WEC), alleging violations of the Help America Vote Act of 2002 (HAVA), 52 U.S.C. § 20901, *et seq.*, and seeking declaratory and injunctive relief. On March 13, 2024, the court granted Defendants' motion to dismiss, finding Plaintiffs failed to allege sufficient facts to show standing. But because there is a strong public interest in election integrity, the court allowed Plaintiffs to file an amended complaint. On April 12, 2024, Plaintiffs filed an amended complaint.

The matter is now before the court on Plaintiffs' motion for summary judgment. Defendants oppose and ask the court to instead grant summary judgment in their favor under Federal Rule of Civil Procedure 56(f)(1). Plaintiffs did not reply and the time to do so has passed. So, Plaintiffs' motion is ripe for the court's adjudication. While the parties devote most of their briefing to merits issues, this case ends where the court must begin—jurisdiction. For the following reasons, Plaintiffs' motion will be denied, and the case will be dismissed.

# BACKGROUND

## A.  Statutory Scheme

HAVA was enacted in 2002 to "establish the Election Assistance Commission to assist in the administration of Federal elections and to otherwise provide assistance with the administration of certain Federal election laws and programs, to establish minimum election administration standards for States and units of local government with responsibility for the administration of federal elections," and for other purposes.  Pub. L. No. 107-252, 116 Stat. 1666 (2002).  HAVA provides two enforcement mechanisms.  *See* 52 U.S.C. §§ 21111–12.  First, the "Attorney General may bring a civil action against any State or jurisdiction in an appropriate United States District Court" for declaratory and injunctive relief "as may be necessary to carry out the uniform and nondiscriminatory election technology and administration requirements" under various HAVA provisions.  § 21111.  Second, "any person who believes that there is a violation of" HAVA's uniform and nondiscriminatory election technology and administration requirements subchapter "may file a complaint" under the "State-based administrative complaint procedures."  § 21112(a).

States that receive payment pursuant to a HAVA program must establish and maintain State-based administrative complaint procedures.  § 21112(a)(1).  HAVA's requirements for such complaint procedures include:

(A) The procedures shall be uniform and nondiscriminatory.

(B) Under the procedures, any person who believes that there is a violation of any provision of subchapter III (including a violation which has occurred, is occurring, or is about to occur) may file a complaint.

(C) Any complaint filed under the procedures shall be in writing and notarized, and signed and sworn by the person filing the complaint.

(D) The State may consolidate complaints filed under subparagraph (B).

(E) At the request of the complainant, there shall be a hearing on the record.

2

(F) If, under the procedures, the State determines that there is a violation of any provision of subchapter III, the State shall provide the appropriate remedy.

(G) If, under the procedures, the State determines that there is no violation, the State shall dismiss the complaint and publish the results of the procedures.

(H) The State shall make a final determination with respect to a complaint prior to the expiration of the 90-day period which begins on the date the complaint is filed, unless the complainant consents to a longer period for making such a determination.

(I) If the State fails to meet the deadline applicable under subparagraph (H), the complaint shall be resolved within 60 days under alternative dispute resolution procedures established for purposes of this section. The record and other materials from any proceedings conducted under the complaint procedures established under this section shall be made available for use under the alternative dispute resolution procedures.

§ 21112(a)(2)(A)–(I).

Wisconsin's HAVA administrative complaint procedure is set forth in Wis. Stat. § 5.061, entitled "Compliance with federal Help America Vote Act." That section provides:

(1) Whenever any person believes that a violation of Title III of [HAVA] has occurred, is occurring, or is proposed to occur with respect to an election for national office in this state, that person may file a written, verified complaint with the [WEC].

(2) If the [WEC] receives more than one complaint under sub. (1) relating to the same subject matter, the [WEC] may consolidate the complaints for purposes of this action.

(3) A complainant under sub. (1) or any of the complainants in a consolidated complaint under sub. (2) may request a hearing and the matter shall then be treated as a contested case under ch. 227, except that the [WEC] shall make a final determination with respect to the merits of the complaint and issue a decision within 89 days of the time that the complaint or the earliest of any complaints was filed, unless the complainant, or each of any complainants whose complaints are consolidated, consents to a specified longer period.

(4) If the [WEC] finds the complaint to be without merit, it shall issue a decision dismissing the complaint. If the [WEC] finds that the violation alleged in the complaint has occurred, is occurring, or is proposed to occur, the [WEC] shall order appropriate relief, except that the [WEC] shall not issue any order under

3

this subsection affecting the right of any person to hold an elective office or affecting the canvass of an election on or after the date of that election.

Wis. Stat. § 5.061.

## B.    Factual Background

The material facts in this case are not copious, nor are they in dispute. The WVA is an issue-advocacy organization. Defs.' Resp. to Pls.' Statement of Material Facts (SOF) ¶ 2, Dkt. No. 41. Ron Heuer is the president of the WVA, and Kenneth Brown is one of its members. *Id.* ¶¶ 17, 24. The WVA's core activities include "working and serving in ways that protect the rights of the organization, where applicable, and its members, and those associated with the WVA, whenever laws, statutes, rules, regulations, or government actions (at whatever level, federal, state, county, city or actions of their respective officials) threaten or impede implied or expressed rights or privileges afforded to them under the federal or state constitutions, laws, or regulations." *Id.* ¶ 2. More specifically, the WVA and its members file "administrative complaints with or against the [WEC] for alleged [HAVA] violations." *Id.* ¶ 6; *see also id.* ¶¶ 7–10.

This case centers on two HAVA complaints that Plaintiffs filed. On September 8, 2022, the WVA and Heuer filed an administrative complaint under Wis. Stat. § 5.061 against the WEC, alleging that the WEC violated HAVA's requirements to maintain its statewide voter registration database through the state's participation in the Electronic Registration Information Center (ERIC) and requesting an evidentiary hearing on the matter. *Id.* ¶¶ 27–29; *see also* 2022 WEC Complaint, Dkt. No. 1-1. On October 19, 2022, the WEC sent the WVA a letter explaining that the verified complaint was "being returned without consideration or dismissal" by the WEC because a complaint brought against the WEC itself warranted "ethical recusal" by the WEC. Defs.' Resp. to Pls.' SOF ¶ 30; *see also* WEC Return Letter, Dkt. No. 1-2.

4

On October 2, 2023, Plaintiffs collectively filed another complaint under Wis. Stat. § 5.061 against the WEC, alleging that the WEC violated HAVA by issuing unlawful guidance that allows overseas absentee votes to be received through the Uniformed and Overseas Citizens Absentee Voting Act, 52 U.S.C. § 20301, *et seq.*, without HAVA-required voter identity and eligibility verification and requesting an evidentiary hearing on the matter. Defs.' Resp. to Pls.' SOF ¶ 34; *see also* 2023 WEC Complaint, Dkt. No. 1-3. On October 4, 2023, the WEC sent Plaintiffs a letter functionally identical to that the WEC sent Plaintiffs on October 19, 2022. Defs.' Resp. to Pls.' SOF ¶ 36. The letter explained that the verified complaint was "being returned without consideration or dismissal" by the WEC because a complaint brought against the WEC itself warranted "ethical recusal" by the WEC. *Id.* ¶¶ 36–37; *see also* WEC Return Letter, Dkt. No. 1-4.

Plaintiffs generally contend that they are entitled to declaratory and injunctive relief because the WEC's 2022 and 2023 "non-decision" response letters violated their federally protected rights. Defendants counter that they are entitled to summary judgment because, undisputed facts aside, neither HAVA nor § 1983 provide a private cause of action on which Plaintiffs can assert their claims in federal court. The court will not reach the cause of action question as this case is resolved at the antecedent question of standing.

## ANALYSIS

Summary judgment is appropriate when the movant shows there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see generally Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The court may grant summary judgment to the nonmovant under Federal Rule of Civil Procedure 56(f). *Haley v. Kolbe & Kolbe Millwork Co.*, 863 F.3d 600, 613 (7th Cir. 2017) (citing other sources).

5

As this court has already said, federal courts do not have jurisdiction to decide every legal question that may arise. Instead, Article III of the United States Constitution limits the jurisdiction of federal courts to actual "cases" or "controversies" brought by litigants who demonstrate standing. U.S. Const. art. III, § 2, cl. 1. The doctrine of standing is not an esoteric doctrine that courts use to avoid difficult decisions; it "serves to prevent the judicial process from being used to usurp the powers of the political branches." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) ("The requirement that jurisdiction be established as a threshold matter 'springs from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'" (alterations omitted) (quoting *Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382 (1884))). It is because of "this overriding and time-honored concern about keeping the Judiciary's power within its proper constitutional sphere" that the court "must put aside the natural urge to proceed directly to the merits of an important dispute and to settle it for the sake of convenience and efficiency." *Hollingsworth v. Perry*, 570 U.S. 693, 704–05 (2013) (alterations and internal quotation marks omitted) (quoting *Raines v. Byrd*, 521 U.S. 811, 820 (1997)). So, "[t]he court is bound to ask and answer for itself" the standing question, "even when not otherwise suggested, and without respect to the relation of the parties to it." *Steel Co.*, 523 U.S. at 94 (quoting *Great Southern Fire Proof Hotel Co. v. Jones*, 177 U.S. 449, 453 (1900)).

"The familiar 'triad of injury in fact, causation, and redressability constitutes the core of Article III's case-or-controversy requirement.'" *Gracia v. SigmaTron Int'l Inc.*, 986 F.3d 1058, 1064 (7th Cir. 2021) (quoting *Steel Co.*, 523 U.S. at 103–04). "The party invoking federal jurisdiction bears the burden of establishing these elements" and must prove them "in the same way as any other matter on which [the party] bears the burden of proof." *Lujan v. Defenders of*

*Wildlife*, 504 U.S. 555, 561 (1992). Injury in fact is at issue here. "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan*, 504 U.S. at 560). Plaintiffs have shown their claimed injury is particularized and actual—each was privy to a WEC proceeding that resulted in the WEC issuing a "no decision" response letter. But Plaintiffs have not shown that their claimed injury is concrete.

"A concrete injury is a *real* injury—that is, one that actually exists, though intangible harms as well as tangible harms may qualify." *Nettles v. Midland Funding LLC*, 983 F.3d 896, 899 (7th Cir. 2020) (citation omitted). Where a purported harm is intangible, "both history and the judgment of Congress play important roles." *Spokeo*, 578 U.S. at 340. As to the former, "it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id.* (citing another source). As to the latter, "Congress may 'elevate to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law.'" *Id.* at 341 (alterations omitted) (quoting *Lujan*, 504 U.S. at 578). But the Court went on to caution that

> Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. Article III standing requires a concrete injury even in the context of a statutory violation. For that reason, [a plaintiff] could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III.

*Id.*; *see also Summers v. Earth Island Inst.*, 555 U.S. 488, 497 (2009) ("Unlike redressability, however, the requirement of injury in fact is a hard floor of Article III jurisdiction that cannot be removed by statute."). More specifically and as relevant here, "[a] citizen may not sue based only

7

on an 'asserted right to have the Government act in accordance with law.'" *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024) (quoting *Allen v. Wright*, 468 U.S. 737, 754 (1984)). And yet, that is the thrust of Plaintiffs' argument.

As to Heuer and Brown, Plaintiffs argue that the two have not had their HAVA complaints against the WEC adjudicated and intend to file HAVA complaints in the future; therefore, they have suffered a harm that is "real" and "immediate." Pls.' Br. in Supp. at 38, Dkt. No. 32 (citing Pls.' SOF ¶ 25, Dkt. No. 35 ("[Brown] had expectations, as understood under the law, rules, or regulations, that the Commission would render an adjudication—a decision. It was [Brown]'s understanding the Commission had to make a decision, but he did not get a decision, which concerns him because he will file HAVA complaints in the future.")); *see also* Defs.' Resp. to Pls.' SOF ¶ 22. In essence, Heuer and Brown argue they were harmed because the WEC has not followed 52 U.S.C. § 21112(a). That is not enough.

Plaintiffs also contend that the WVA has organizational standing. Organizations can establish standing "to sue on their own behalf for injuries they have sustained." *All. for Hippocratic Med.*, 602 U.S. at 393 (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 n.19 (1982)). To do so, an organization "must satisfy the usual standards for injury in fact, causation, and redressability." *Id.* at 394. But as with an individual, "an organization may not establish standing simply based on the 'intensity of the litigant's interest' or because of strong opposition to the government's conduct, 'no matter how longstanding the interest and no matter how qualified the organization.'" *Id.* (internal citation omitted) (first quoting *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 486 (1982); and then quoting *Sierra Club v. Morton*, 405 U.S. 727, 739 (1972)).

8

Plaintiffs have not shown that the WVA has suffered an injury in fact. In an attempt to do so, they reassert that the WVA has been harmed by the WEC's failure to adjudicate its HAVA complaints. Plaintiffs further argue that "the WEC's actions have directly affected and interfered with the WVA's core political activities" because the WVA has been forced to divert resources from other initiatives to litigating in federal court. Pls.' Br. in Supp. at 36; Defs.' Resp. to Pls.' SOF ¶ 12. But the Supreme Court has shut the door on that argument:

> [A]n organization that has not suffered a concrete injury caused by a defendant's action cannot spend its way into standing simply by expending money to gather information and advocate against the defendant's action. An organization cannot manufacture its own standing in that way. . . . Indeed, that theory would mean that all the organizations in America would have standing to challenge almost every federal policy that they dislike, provided they spend a single dollar opposing those policies.

*All. for Hippocratic Med.*, 602 U.S. at 394–95. Thus, the WVA comes up short like Heuer and Brown; it does not have organizational standing.

One final point. There may be concern that if Heuer, Brown, and the WVA do not have standing, then who does? The Court also answered this question in *Alliance for Hippocratic Medicine*. There, the Court observed that it "has long rejected that kind of 'if not us, who?' argument as a basis for standing." 602 U.S. at 396 (citing other sources). For "[t]he Framers of the Constitution did not 'set up something in the nature of an Athenian democracy or a New England town meeting to oversee the conduct of the . . . Government by means of lawsuits in federal courts.'" *Id.* (quoting *United States v. Richardson*, 418 U.S. 166, 179 (1974)). Thus, it may be that some issues are necessarily "left to the political and democratic processes." *Id.* In this case, Defendants note that HAVA contains a remedy for allegedly deficient administrative complaint procedures—a federal audit. Plaintiffs may wish to consider pursuing that remedy for the relief they seek.

9

In sum, Plaintiffs have not shown that Heuer, Brown, or the WVA have suffered an injury in fact. Accordingly, they do not have standing to proceed in federal court, so the court must deny their motion for summary judgment and dismiss this action.

**IT IS THEREFORE ORDERED** that Plaintiffs' motion for summary judgment (Dkt. No. 31) is **DENIED**.

**IT IS FURTHER ORDERED** that this case is dismissed for lack of standing. The Clerk is directed to enter judgment accordingly.

Dated at Green Bay, Wisconsin this 31st day of January, 2025.

William C. Griesbach
United States District Judge

10

# United States District Court

## EASTERN DISTRICT OF WISCONSIN

WISCONSIN VOTER ALLIANCE, et al.,

        Plaintiffs,

**JUDGMENT IN A CIVIL CASE**

    v.                                    Case No.  23-C-1416

DON M. MILLIS, et al.,

        Defendants.

☐    **Jury Verdict.**  This action came before the Court for a trial by jury.  The issues have been tried and the jury has rendered its verdict

☒    **Decision by Court.**  This action came before the Court for consideration.

    **IT IS HEREBY ORDERED AND ADJUDGED** that Plaintiffs take nothing and this case is dismissed.

                                  Approved:  s/ William C. Griesbach
                                                  WILLIAM C. GRIESBACH
                                                United States District Judge

Dated:  January 31, 2025

                                                  GINA M. COLLETTI
                                                  Clerk of Court

                                                  s/ Mary Fisher
                                                  (By) Deputy Clerk