No. 25-1279

————

IN THE UNITED STATES COURT OF APPEALS

FOR THE SEVENTH CIRCUIT

WISCONSIN VOTER ALLIANCE, et al.,

Plaintiffs-Appellants,

v.

DON M. MILLIS, et al.,

Defendants-Appellees.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN,
THE HONORABLE WILLIAM C. GRIESBACH, PRESIDING

**BRIEF OF DEFENDANTS-APPELLEES**

JOSHUA L. KAUL
Attorney General of Wisconsin

CLAYTON P. KAWSKI*
Assistant Attorney General
State Bar #1066228

STEVEN C. KILPATRICK
Assistant Attorney General
State Bar # 1025452

JODY J. SCHMELZER
Assistant Attorney General
State Bar # 1027796

Attorneys for Defendants-Appellees

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 266-8549 (Kawski)
(608) 266-1792 (Kilpatrick)
(608) 266-3094 (Schmelzer)
(608) 294-2907 (Fax)
kawskicp@doj.state.wi.us
kilpatricksc@doj.state.wi.us
schmelzerjj@doj.state.wi.us

*Counsel of Record*

# TABLE OF CONTENTS

Page

JURISDICTIONAL STATEMENT ..........................................................1

I.    Information required by Seventh Circuit Rule
      28(a)(1)...................................................................................1

II.   Information required by Seventh Circuit Rule
      28(a)(2)...................................................................................1

III.  Information required by Seventh Circuit Rule
      28(a)(3)...................................................................................2

INTRODUCTION .................................................................................2

STATEMENT OF THE ISSUE .............................................................3

STATEMENT OF THE CASE ..............................................................4

I.    Statutory background .............................................................4

      A.   HAVA requires states to establish
           administrative-complaint procedures.....................................4

      B.   Wisconsin's HAVA administrative-complaint
           procedures ............................................................................5

II.   Factual background .................................................................6

      A.   Wisconsin Voter Alliance is an issue-advocacy
           organization, and Ron Heuer and Kenneth
           Brown are its president and a member,
           respectively..........................................................................6

      B.   Appellants filed HAVA complaints with and
           against the Commission, its members, and its
           administrator, and the Commission
           determined it could not rule on complaints
           against itself........................................................................7

III.  Procedural history ...................................................................9

Page

A. The district court dismissed Appellants' initial complaint and allowed them to file an amended complaint to attempt to address their lack of standing. ....................................................9

B. Appellants filed a summary-judgment motion, and Appellees opposed it and asked for summary judgment. ................................................9

C. The district court denied Appellants' summary-judgment motion, held they lack standing, and dismissed their case. ...........................................10

SUMMARY OF THE ARGUMENT .......................................................13

STANDARD OF REVIEW ....................................................................14

ARGUMENT .........................................................................................15

I. The district court correctly held that Appellants lack standing. ...................................................................................15

A. Article III allows the adjudication of only cases and controversies, which requires a plaintiff to have standing. ......................................................15

B. The district court properly held that it lacked jurisdiction over Appellants' amended complaint because they do not have Article III standing. ..........................................................19

1. Appellants lack standing because their claims are only for alleged violations of HAVA's statutory procedures, which do not meet Article III's injury-in-fact requirement. ...........................................20

2. Appellants lack standing because their alleged injuries cannot be redressed by federal judicial relief when HAVA mandates adjudication of claims by state tribunals. ..................................................22

Page

II.   Appellants' arguments are not persuasive. .................................. 26

    A.   Heuer and Brown's First Amendment argument does not remedy their lack of standing. ............................................................ 27

    B.   Wisconsin Voter Alliance's arguments are unpersuasive. ....................................................... 31

        1.   Wisconsin Voter Alliance does not have organizational standing. ............................................ 31

        2.   Wisconsin Voter Alliance does not have associational standing. ............................................. 35

    CONCLUSION ........................................................................ 38

Page

# TABLE OF AUTHORITIES

## Cases

*Am. Civ. Rts. Union v. Phila. City Comm'rs,*
    872 F.3d 175 (3d Cir. 2017) ........................................................ 4

*Archie v. City of Racine,*
    847 F.2d 1211 (7th Cir. 1988) ...................................................... 29

*Baysal v. Midvale Indem. Co.,*
    78 F.4th 976 (7th Cir. 2023) ........................................................ 18

*Borough of Duryea v. Guarnieri,*
    564 U.S. 379 (2011) ............................................................ 27, 28, 30

*Bost v. Ill. State Bd. of Elections,*
    114 F.4th 634 (7th Cir. 2024) .................................................. 19, 21

*Caperton v. A.T. Massey Coal Co., Inc.,*
    556 U.S. 868 (2009) .................................................................... 2

*Choice v. Kohn Law Firm, S.C.,*
    77 F.4th 636 (7th Cir. 2023) ........................................................ 18

*Dinerstein v. Google, LLC,*
    73 F.4th 502 (7th Cir. 2023) .............................................. 17, 18, 21

*Food & Drug Admin. v. All. for Hippocratic Med.,*
    602 U.S. 367 (2024) ....................................................... 11, *passim*

*Hilton v. City of Wheeling,*
    209 F.3d 1005 (7th Cir. 2000) .................................................. 27, 28

*Hollingsworth v. Perry,*
    570 U.S. 693 (2013) .................................................................... 19

*Hunt v. Wash. State Apple Advertising Comm'n,*
    432 U.S. 333 (1977) ............................................................... 35–36

*Int'l Union of Operating Eng'rs, Local 139, AFL-CIO v. Daley,*
    983 F.3d 287 (7th Cir. 2020) .................................................. 27, 30

*Iowa Voter Alliance v. Black Hawk County*, No. C20-2078-LTS,
    2020 WL 6151559 (N.D. Iowa Oct. 20, 2020) ............................. 26

Page

*Kegonsa Joint Sanitary Dist. v. City of Stoughton*,
   274 N.W.2d 598 (Wis. 1979) .......................................................... 24

*Larkin v. Fin. Sys. of Green Bay, Inc.*,
   982 F.3d 1060 (7th Cir. 2020) ....................................................... 18

*Mack v. Resurgent Cap. Servs., L.P.*,
   70 F.4th 395 (7th Cir. 2023) ......................................................... 18

*Minn. State Bd. for Cmty. Colls. v. Knight*,
   465 U.S. 271 (1984) ........................................................... 27, 28, 30

*Minnesota Voters Alliance v. City of Minneapolis*, No. CV 20-2049(MJD/TNL),
   2020 WL 6119937 (D. Minn. Oct. 16, 2020) ................................. 26

*Nabozny v. Optio Solutions LLC*,
   84 F.4th 731 (7th Cir. 2023) ............................... 15, 18, 22, 26

*Oels v. Dunleavy*, No. 3:23-CV-00006-SLG,
   2023 WL 3948289 (D. Alaska June 12, 2023) ............................ 25

*Parents Protecting Our Child., UA v. Eau Claire Area Sch. Dist.*,
   95 F.4th 501 (7th Cir. 2024) ......................................................... 36

*Patterson v. Howe*,
   96 F.4th 992 (7th Cir. 2024) ......................................................... 18

*Pierre v. Midland Credit Mgmt., Inc.*,
   29 F.4th 934 (7th Cir. 2022) ......................................................... 18

*Prairie Rivers Network v. Dynegy Midwest Generation, LLC*,
   2 F.4th 1002 (7th Cir. 2021) ......................................................... 36

*Shipley v. Chi. Bd. of Election Comm'rs*,
   947 F.3d 1056 (7th Cir. 2020) ...................................................... 28

*Speech First, Inc. v. Cartwright*,
   32 F.4th 1110 (11th Cir. 2022) .............................................. 30, 31

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016) ........................................................10, *passim*

*Spuhler v. State Collection Serv., Inc.*,
   983 F.3d 282 (7th Cir. 2020) ........................................................ 14

Page

*Teigen v. Wis. Elections Comm'n,*
976 N.W.2d 519 (Wis. 2022) ............................................ 23

*TransUnion LLC v. Ramirez,*
594 U.S. 413 (2021) ...................................................15, *passim*

*Turkow v. DNR,*
576 N.W.2d 288 (Wis. Ct. App. 1998) ........................... 24

*White v. United States,*
8 F.4th 547 (7th Cir. 2021) .............................................. 29

*Whitmore v. Arkansas,*
495 U.S. 149 (1990) ........................................................ 30

**Statutes**

28 U.S.C. § 1291 ............................................................. 1, 2

28 U.S.C. § 2107(a) ........................................................ 1–2

28 U.S.C. § 1331 ............................................................. 1

28 U.S.C. § 1343(a)(3) .................................................... 1

42 U.S.C. § 1983 ...................................................1, *passim*

52 U.S.C. § 20301 ........................................................... 8

52 U.S.C. § 20901 ........................................................... 1

52 U.S.C. § 21084 ........................................................... 4

52 U.S.C. § 21085 ........................................................... 4

52 U.S.C. § 21111 ........................................................... 4

52 U.S.C. § 21112(2)(A) & (B) ....................................... 22

52 U.S.C. § 21112(a)(1) .................................................. 5

52 U.S.C. § 21112(a)(2)(B), (E), (F), (H) ....................... 5

52 U.S.C. § 21112(a)(2)(E) ............................................. 22

52 U.S.C. § 21112(a)(2)(F) ............................................. 22

52 U.S.C. §§ 21081–85 ................................................... 4

Page

Wis. Stat. § 5.061 ..................................................................5, *passim*

Wis. Stat. § 5.061(1) ............................................................ 5–6, 22

Wis. Stat. § 5.061(2) ...................................................................... 6

Wis. Stat. § 5.061(3) ................................................................. 6, 23

Wis. Stat. § 5.061(4) ...................................................................... 6

Wis. Stat. § 227.53(1) ............................................................. 23, 24

Wis. Stat. § 227.53(1)(a) .............................................................. 24

Wis. Stat. § 227.52 ........................................................................ 23

Wis. Stat. §§ 227.53(1)(a)2. & 2m. ............................................. 23

**Rules**

Fed. R. App. P. 4(a)(1)(A) ............................................................. 2

7th Cir. R. 28(a)(1) ......................................................................... 1

7th Cir. R. 28(a)(2)(i) ...................................................................... 1

7th Cir. R. 28(a)(2)(ii) ..................................................................... 1

7th Cir. R. 28(a)(2)(iii) .................................................................... 1

7th Cir. R. 28(a)(2)(iv) .................................................................... 2

7th Cir. R. 28(a)(2)(v) ..................................................................... 2

7th Cir. R. 28(a)(3)(i) ...................................................................... 2

7th Cir. R. 28(a)(3)(ii) ..................................................................... 2

7th Cir. R. 28(a)(3)(iii) .................................................................... 2

7th Cir. R. 28(a)(3)(iv) .................................................................... 2

**Constitutional Amendments**

U.S. Const. amend. I .................................................................... 29

U.S. Const. art. III ....................................................................... 15

## JURISDICTIONAL STATEMENT

Plaintiffs-Appellants' brief does not include a complete and correct jurisdictional statement. *See* 7th Cir. R. 28(b). A complete and correct statement follows.

## I.     Information required by Seventh Circuit Rule 28(a)(1)

The basis for the district court's jurisdiction is 28 U.S.C. §§ 1331 (federal question) and 1343(a)(3) (civil rights). *See* 7th Cir. R. 28(a)(1). Appellants' amended complaint asserted claims under 42 U.S.C. § 1983 for purported violations of the Help America Vote Act of 2002 (HAVA), 52 U.S.C. § 20901, et seq. (Dkt. 15.)

Appellants moved for summary judgment, and Appellees responded and requested summary judgment as non-movants. (Dkt. 31–35; 40–42.) The court denied Appellants' motion and determined that it lacks jurisdiction because Appellants did not have Article III standing. (Dkt. 43.) On January 31, 2025, the court entered final judgment in Appellees' favor. (Dkt. 44.)

## II.    Information required by Seventh Circuit Rule 28(a)(2)

This Court has jurisdiction pursuant to 28 U.S.C. § 1291 over the district court's January 31, 2025, judgment. (Dkt. 44); *see* 7th Cir. R. 28(a)(2)(i). Appellants did not file a motion for a new trial or alteration of the judgment or any other motion claimed to toll the time within which to appeal. *See* 7th Cir. R. 28(a)(2)(ii), (iii). On February 19, 2025, Appellants timely filed a notice of

appeal. (Dkt. 45); *see* 7th Cir. R. 28(a)(2)(iv); 28 U.S.C. § 2107(a); Fed. R. App. P. 4(a)(1)(A). This is not a direct appeal from the decision of a magistrate judge. *See* 7th Cir. R. 28(a)(2)(v).

## III.   Information required by Seventh Circuit Rule 28(a)(3)

There are no claims that remain for disposition in the district court. *See* 7th Cir. R. 28(a)(3)(i). The district court's January 31, 2025, judgment is final and appealable. *See* 28 U.S.C. § 1291. The basis for appellate jurisdiction is not the "collateral order doctrine." *See* 7th Cir. R. 28(a)(3)(ii). The judgment sought to be reviewed did not remand a case to a bankruptcy judge or an administrative agency. *See* 7th Cir. R. 28(a)(3)(iii). No issues remain in the district court. *See* 7th Cir. R. 28(a)(3)(iv).

## INTRODUCTION

No one may "be a judge in his own cause, because his interest would certainly bias his judgment, and, not improbably, corrupt his integrity." *Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S. 868, 876 (2009) (quoting The Federalist No. 10, p. 59 (J. Cooke ed. 1961) (J. Madison)). This case involves administrative complaints Appellants filed with and against the Wisconsin Elections Commission for alleged violations of HAVA. In other words, Appellants asked the Commission to decide HAVA complaints filed against itself.

The Commission declined to address the merits of the complaints because the Commission and its members cannot rule on complaints filed against themselves. Dissatisfied with not receiving decisions on the merits of their complaints, Appellants filed an action under 42 U.S.C. § 1983 alleging a separate violation of HAVA.

The district court properly held that it lacks subject matter jurisdiction over Appellants' claims because they did not show that they have Article III standing. HAVA provides that administrative complaints alleging HAVA violations by state actors are to be resolved by state tribunals, not federal courts. Therefore, Appellants did not show a concrete injury in fact by alleging mere statutory violations of HAVA's procedures that states must use to address HAVA complaints. Nor are Appellants' HAVA administrative complaints redressable in federal court, as HAVA itself requires that alleged HAVA violations are addressed only by state tribunals.

This Court should affirm the district court's judgment.

## STATEMENT OF THE ISSUE

Did the district court correctly determine that it did not have subject matter jurisdiction because Appellants lack standing?

## STATEMENT OF THE CASE

### I.    Statutory background

#### A.    HAVA requires states to establish administrative-complaint procedures.

HAVA, Public Law 107-252, "was enacted in 2002 to help improve the equipment used to cast votes, the way registration lists are maintained, and how polling operations are conducted." *Am. Civ. Rts. Union v. Phila. City Comm'rs*, 872 F.3d 175, 180 (3d Cir. 2017).

Subchapter III of HAVA, titled "Uniform and Nondiscriminatory Election Technology and Administration Requirements," provides, among other things, requirements for state election administration as to voting-systems standards, provisional voting and voting-information requirements, computerized statewide-voter-registration-list requirements, and requirements for voters who register by mail. 52 U.S.C. §§ 21081–85. They are "minimum requirements," 52 U.S.C. § 21084, and States may establish stricter ones. States have discretion regarding how to comply with HAVA's subchapter III requirements. 52 U.S.C. § 21085.

Subchapter IV of HAVA addresses enforcement. 52 U.S.C. § 21111, the Attorney General enforcement provision, provides that "[t]he Attorney General may bring a civil action against any State or jurisdiction in an appropriate United States District Court for such declaratory and injunctive relief . . . as may be necessary to carry out the uniform and nondiscriminatory election

technology and administration requirements under sections 21081, 21082, and 21083, and 21083a of this title." The state-administrative-complaint provision, 52 U.S.C. § 21112, provides that "[i]f a State receives any payment under a program under this chapter, the State shall be required to establish and maintain State-based administrative complaint procedures which meet the requirements of paragraph (2)." 52 U.S.C. § 21112(a)(1).

Those requirements for state HAVA-complaint procedures include: "(B) Under the procedures, any person who believes that there is a violation of any provision of subchapter III . . . may file a complaint"; "(E) At the request of the complainant, there shall be a hearing on the record"; "(F) If, under the procedures, the State determines that there is a violation of any provision of subchapter III, the State shall provide the appropriate remedy"; and "(H) The State shall make a final determination with respect to a complaint prior to the expiration of the 90-day period which begins on the date the complaint is filed, unless the complainant consents to a longer period for making such a determination." 52 U.S.C. § 21112(a)(2)(B), (E), (F), (H).

### B.    Wisconsin's HAVA administrative-complaint procedures

In 2003, Wisconsin enacted Wis. Stat. § 5.061, titled "Compliance with federal Help America Vote Act." Under the statute, "[w]henever any person believes that a violation of Title III of P.L. 107-252 has occurred, is occurring, or is proposed to occur with respect to an election for national office in this

state, that person may file a written, verified complaint with the [Wisconsin Elections C]ommission." Wis. Stat. § 5.061(1). "If the commission receive[d] more than one complaint under sub. (1) relating to the same subject matter, the commission may consolidate the complaints." Wis. Stat. § 5.061(2).

"A complainant . . . may request a hearing and the matter shall then be treated as a contested case under [Wis. Stat.] ch. 227, except that the commission shall make a final determination with respect to the merits of the complaint." Wis. Stat. § 5.061(3). The Commission must "issue a decision within 89 days of the time that the complaint . . . was filed, unless the complainant . . . consents to a specified longer period." *Id.* "If the commission finds the complaint to be without merit, it shall issue a decision dismissing the complaint. If the commission finds that the violation alleged in the complaint has occurred, is occurring, or is proposed to occur, the commission shall order appropriate relief." Wis. Stat. § 5.061(4).

## II.  Factual background

### A.  Wisconsin Voter Alliance is an issue-advocacy organization, and Ron Heuer and Kenneth Brown are its president and a member, respectively.

The district court summarized the relevant facts, which are undisputed. (Dkt. 43:4–5.) Wisconsin Voter Alliance "is an issue-advocacy organization." (Dkt. 43:4.) "Ron Heuer is the president of the WVA, and Kenneth Brown is one of its members." (Dkt. 43:4.) "The WVA's core activities include 'working

and serving in ways that protect the rights of the organization, where applicable, and its members, and those associated with the WVA, whenever laws, statutes, rules, regulations, or government actions (at whatever level, federal, state, county, city or actions of their respective officials) threaten or impede implied or expressed rights or privileges afforded to them under the federal or state constitutions, laws, or regulations.'" (Dkt. 43:4 (quoting Dkt. 41 ¶ 2).) "More specifically, the WVA and its members file 'administrative complaints with or against the [Commission] for alleged [HAVA] violations.'" (Dkt. 43:4 (quoting Dkt. 41 ¶ 6).)

### B.    Appellants filed HAVA complaints with and against the Commission, its members, and its administrator, and the Commission determined it could not rule on complaints against itself.

"This case centers on two HAVA complaints that Plaintiffs filed." (Dkt. 43:4.) "On September 8, 2022, the WVA and Heuer filed an administrative complaint under Wis. Stat. § 5.061 against the [Commission], alleging that the [Commission] violated HAVA's requirements to maintain its statewide voter registration database through the state's participation in the Electronic Registration Information Center (ERIC) and requesting an evidentiary hearing on the matter." (Dkt. 43:4 (citing Dkt. 41 ¶¶ 27–29; 1-1).)

"On October 19, 2022, the [Commission] sent the WVA a letter explaining that the verified complaint was 'being returned without consideration or

dismissal' by the [Commission] because a complaint brought against the [Commission] itself warranted 'ethical recusal' by the Commission." (Dkt. 43:4 (citing Dkt. 41 ¶ 30; 1-2).)

"On October 2, 2023, Plaintiffs collectively filed another complaint under Wis. Stat. § 5.061 against the [Commission], alleging that the [Commission] violated HAVA by issuing unlawful guidance that allows overseas absentee votes to be received through the Uniformed and Overseas Citizens Absentee Voting Act, 52 U.S.C. § 20301, *et seq.*, without HAVA-required voter identity and eligibility verification and requesting an evidentiary hearing on the matter." (Dkt. 43:5 (citing Dkt. 41 ¶ 34; 1-3).)

"On October 4, 2023, the [Commission] sent Plaintiffs a letter functionally identical to that the [Commission] sent Plaintiffs on October 19, 2022." (Dkt. 43:5 (citing Dkt. 41 ¶ 36).) "The letter explained that the verified complaint was 'being returned without consideration or dismissal' by the [Commission] because a complaint brought against the [Commission] itself warranted 'ethical recusal' by the [Commission]." (Dkt. 43:5 (citing Dkt. 41 ¶¶ 36–37; 1-4).)

### III. Procedural history

#### A. The district court dismissed Appellants' initial complaint and allowed them to file an amended complaint to attempt to address their lack of standing.

On October 25, 2023, Appellants filed an initial complaint for declaratory and injunctive relief against the Commission, its members, and its administrator. (Dkt. 1.) The district court granted a motion to dismiss that complaint but allowed Appellants to file an amended complaint. (Dkt. 14.)

In its decision dismissing the initial complaint, the district court addressed Appellees' argument that Appellants failed to allege a concrete harm to establish standing. (Dkt. 14:7.) The court found that it was "not enough" for Appellants to "simply assert that their complaint 'meets Article III standing requirements as a 'facial challenge' because HAVA provides for protectable federal rights through 42 U.S.C. § 1983.'" (Dkt. 14:8 (quoting Dkt. 11:5).) The court allowed Appellants to file an amended complaint so they could attempt to cure the standing deficiency "because there is a strong public interest in election integrity." (Dkt. 43:1.)

#### B. Appellants filed a summary-judgment motion, and Appellees opposed it and asked for summary judgment.

Appellants filed an amended complaint on April 15, 2024. (Dkt. 15.) Appellees answered the amended complaint, and the parties stipulated to dismissal of two of the counts in that amended complaint. (Dkt. 18; 23; 27.)

As to the remaining claims, Appellants filed a motion for summary judgment, declarations with exhibits, and a statement of material facts. (Dkt. 31–35.) Appellees filed an opposing memorandum and requested that judgment be entered in their favor, along with filing a declaration, exhibits, and a response to Appellants' proposed facts. (Dkt. 40–42-2.)

### C. The district court denied Appellants' summary-judgment motion, held they lack standing, and dismissed their case.

On January 31, 2025, the district court issued a decision denying Appellants' summary-judgment motion and dismissing the case. (Dkt. 43.) The court entered judgment the same day. (Dkt. 44.) The court did not reach the merits of Appellants' claims. (Dkt. 43:1.) Instead, it addressed Article III standing, homing in on the injury-in-fact prong and whether Appellants showed that their claimed injury is concrete. (Dkt. 43:1, 6–9.)

The district court first summarized the HAVA statutory scheme and Wisconsin's HAVA administrative procedures in Wis. Stat. § 5.061. (Dkt. 43:2–4.) The court then stated the background facts and summary-judgment standard. (Dkt. 43:4–5.) The court synthesized the law of jurisdiction and standing and determined that "[i]njury in fact is at issue here." (Dkt. 43:7.)

The district court explained that, "[t]o establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or

hypothetical.'" (Dkt. 43:7 (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016)).) The court held that "Plaintiffs have shown their claimed injury is particularized and actual—each was privy to a [Commission] proceeding that resulted in the [Commission] issuing a 'no decision' response letter." (Dkt. 43:7.) "But Plaintiffs have not shown that their claimed injury is concrete." (Dkt. 43:7.)

The district court explained that "[a] concrete injury is a *real* injury—that is, one that actually exists, though intangible harms as well as tangible harms may qualify." (Dkt. 43:7 (citation omitted).) For intangible harms, courts consider whether they have "a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." (Dkt. 43:7 (quoting *Spokeo*, 578 U.S. at 340).) "Article III standing requires a concrete injury even in the context of a statutory violation," and a plaintiff "could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." (Dkt. 43:7 (quoting *Spokeo*, 578 U.S. at 341).) And "[m]ore specifically and as relevant here, '[a] citizen may not sue based only on an 'asserted right to have the Government act in accordance with law.'" (Dkt. 43:7–8 (quoting *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024)).) The court explained that "yet, that is the thrust of Plaintiffs' argument." (Dkt. 43:8.) As to Heuer and Brown, "in essence," "they

argue they were harmed because the [Commission] has not followed 52 U.S.C. § 21112(a)," which is "not enough" to show Article III standing. (Dkt. 43:8.)

The district court addressed Wisconsin Voter Alliance's organizational-standing theory and rejected it. (Dkt. 43:8–9.) "[A]n organization 'must satisfy the usual standards for injury in fact, causation, and redressability'" and "may not establish standing simply based on the intensity of the litigant's interest or because of strong opposition to the government's conduct, no matter how longstanding the interest and no matter how qualified the organization." (Dkt. 43:8 (quoting *All. for Hippocratic Med.*, 602 U.S. at 394).)

The district court held that Wisconsin Voter Alliance had not shown it suffered an injury in fact based on its view that the Commission's failure to adjudicate HAVA complaints "directly affected and interfered with [Wisconsin Voter Alliance's] core political activities' because [it] has been forced to divert resources from other initiatives to litigating in federal court." (Dkt. 43:9 (quoting Dkt. 32:36 & citing Dkt. 41 ¶ 12).) The court held that "the Supreme Court has shut the door on that argument" in *Alliance for Hippocratic Medicine*. (Dkt. 43:9.) Specifically, an organization "that has not suffered a concrete injury caused by a defendant's action cannot spend its way into standing simply by expending money to gather information and advocate against the defendant's action." (Dkt. 43:9 (quoting *All. for Hippocratic Med.*, 602 U.S. at 394).) "Thus, [Wisconsin Voter Alliance] comes up short like Heuer

12

and Brown; it does not have organizational standing." (Dkt. 43:9.) The court concluded that "Plaintiffs have not shown that [they] have suffered an injury in fact," so "they do not have standing to proceed in federal court." (Dkt. 43:10.)

Appellants timely filed a notice of appeal on February 19, 2025. (Dkt. 45.)

## SUMMARY OF THE ARGUMENT

This Court should affirm the district court's judgment. The court properly held that it lacked jurisdiction when Appellants did not establish standing.

First, the court correctly concluded that Appellants did not show a concrete injury in fact. They asserted only statutory violations of HAVA's procedures as to their pursuit of alleged HAVA violations before a state tribunal, which is insufficient to establish Article III standing. A statutory violation does not confer standing—the injury must be of a constitutional dimension, and Appellants did not show such an injury.

Second, that type of alleged statutory injury is not the kind that a court can redress because Congress has mandated that HAVA violations are addressed through state tribunals, not by federal courts. If Appellants wanted to seek redress of the Commission's declining to address their HAVA complaints, the proper venue was through state law administrative procedures, including state court judicial review.

Thus, Appellants have not met the injury-in-fact or redressability prongs of standing.

Appellants' arguments here should not persuade this Court to disturb the district court's judgment. Their claim that Heuer and Brown have standing is foreclosed by *Spokeo* and its progeny. Appellants' theory based on the First Amendment right to petition the government for grievances fares no better. Their right to petition the government remains intact, and controlling law instructs that the government need not respond to such petitioning, no matter how meritorious it may be.

Likewise, Wisconsin Voter Alliance does not have organizational standing. *Alliance for Hippocratic Medicine* forecloses an organizational-standing argument like that asserted here, where Wisconsin Voter Alliance essentially argues that it spent its way into standing. Wisconsin Voter Alliance does not have associational standing based on Heuer and Brown's membership in the organization, as they do not have standing on their own.

This Court should affirm the district court's judgment.

## STANDARD OF REVIEW

"We review *de novo* whether the plaintiffs have satisfied the Article III standing criteria." *Spuhler v. State Collection Serv., Inc.*, 983 F.3d 282, 285 (7th Cir. 2020).

## ARGUMENT

### I.    The district court correctly held that Appellants lack standing.

The district court correctly granted judgment to Appellees. Article III jurisdiction principles resolve this case.

#### A.    Article III allows the adjudication of only cases and controversies, which requires a plaintiff to have standing.

Article III of the Constitution limits the federal judicial power to resolving "Cases" and "Controversies." U.S. Const. art. III, § 2. This Court has observed that "[a]n essential component of the case-or-controversy limitation is the requirement that a plaintiff have standing to sue—that is, a 'personal stake' in the outcome of the suit sufficient to engage the jurisdiction of the federal court." *Nabozny v. Optio Solutions LLC*, 84 F.4th 731, 734 (7th Cir. 2023) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021)).

It is a plaintiff's burden to demonstrate standing: "[a]s the party seeking to invoke federal jurisdiction, [Appellants] bear[ ] the burden of establishing [their] standing to sue." *Id.*. That requires three things: "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Id.* (citation omitted). Article III does not treat an injury in law as an injury in fact. Instead, only "plaintiffs who have been concretely harmed" may sue. *TransUnion*, 594 U.S. at 427.

15

In *Spokeo,* the Supreme Court elaborated on what it means for an injury to be "particularized" and "concrete." *Spokeo*, 578 U.S. at 339–42. *Spokeo* involved a putative class action under the Fair Credit Reporting Act (FCRA). *Id.* at 333. The question presented was whether the plaintiff had standing to maintain an action in federal court under FCRA against Spokeo, a company operating a "people search engine" that disseminated allegedly incorrect information about the plaintiff. *Id.* FCRA imposed a number of requirements on consumer reporting agencies, including following reasonable procedures to assure maximum accuracy of consumer reports, notifying providers and users of consumer information of their responsibilities under FCRA, and limiting the circumstances in which agencies provide consumer reports for employment purposes. *Id.* The *Spokeo* plaintiff alleged no injury to himself from Spokeo's alleged deviations from these requirements, but simply alleged that the company had willfully failed to comply. *Id.* at 336.

The Ninth Circuit held that "the violation of a statutory right is usually a sufficient injury in fact to confer standing," *id.* at 337 (citations omitted), but the Supreme Court vacated the judgment and remanded. *Id.* at 343. The Court explained that "[f]or an injury to be 'particularized', it 'must affect the plaintiff in a personal and individual way.'" *Id.* at 339 (citation omitted). It then held that particularization was just the beginning, not the end: "[a]n injury in fact must also be 'concrete.'" *Id.* The Court explained that

16

"[a] 'concrete' injury must be '*de facto*'; that is, it must actually exist." *Id.* at 340 (citation omitted). "[C]oncrete" means "'real,' and not 'abstract.'" *Id.* (citations omitted). The requirement of a concrete injury persisted even when a plaintiff alleged a statutory violation. *Id.* at 341. The Court explained that the plaintiff "could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id.*

Applying *Spokeo*, courts carefully consider whether a plaintiff has alleged a concrete harm when a statutory violation is the basis for his claim. In *TransUnion*, for example, the Court held that "Congress's creation of a statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III." 594 U.S. at 426.

This Court has viewed this inquiry through the lens of whether the injury relates to a harm traditionally recognized in the courts: "[a]s the [Supreme] Court has explained, our task—especially when the plaintiff asserts an intangible harm—is to assess whether the alleged injury has 'a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts.'" *Dinerstein v. Google, LLC*, 73 F.4th 502, 511 (7th Cir. 2023) (quoting *TransUnion*, 594 U.S. at 424). "The inquiry asks whether the plaintiff has 'identified a close historical or common-law analogue'

17

for his asserted injury." *Id.* (quoting *TransUnion*, 594 U.S. at 424); *see also Patterson v. Howe*, 96 F.4th 992, 996–97 (7th Cir. 2024) ("Courts must consider whether the harm bears a close relationship to any harms traditionally recognized as providing a basis for lawsuits in American courts, including those harms specified by the Constitution itself").

Since *Spokeo* and *TransUnion*, this Court has consistently held that plaintiffs who raise statutory violations without alleging a concrete harm to themselves lack Article III standing. *See Nabozny*, 84 F.4th at 734–38; *Baysal v. Midvale Indem. Co.*, 78 F.4th 976, 979–80 (7th Cir. 2023); *Choice v. Kohn Law Firm, S.C.*, 77 F.4th 636, 638–40 (7th Cir. 2023); *Pierre v. Midland Credit Mgmt., Inc.*, 29 F.4th 934, 939–41 (7th Cir. 2022); *Larkin v. Fin. Sys. of Green Bay, Inc.*, 982 F.3d 1060, 1063–67 (7th Cir. 2020).

More specifically, courts have found no standing where plaintiffs raise only a procedural violation: plaintiffs cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Spokeo*, 578 U.S. at 341; *see also Mack v. Resurgent Cap. Servs., L.P.*, 70 F.4th 395, 403 (7th Cir. 2023) ("A bare procedural violation, divorced from any concrete harm, would not satisfy the injury-in-fact requirement for Article III standing.").

Lastly, "[a] citizen may not sue based only on an 'asserted right to have the Government act in accordance with law.'" *All. for Hippocratic Med.*,

18

602 U.S. at 381 (citation omitted). As this Court has recognized, "an injury to an individual's right to have the government follow the law, without more, is a generalized grievance that cannot support standing 'no matter how sincere.'" *Bost v. Ill. State Bd. of Elections*, 114 F.4th 634, 640 (7th Cir. 2024) (quoting *Hollingsworth v. Perry*, 570 U.S. 693, 706 (2013)).

### B. The district court properly held that it lacked jurisdiction over Appellants' amended complaint because they do not have Article III standing.

Appellants lack Article III standing. They attempt to pursue claims for only procedural violations of HAVA for which they have not demonstrated a concrete harm to themselves. Under *Spokeo* and its progeny, a statutory violation, without more, is insufficient to show standing.

Further, Appellants' claims cannot be redressed by federal judicial relief, thereby failing another standing requirement. HAVA mandates a specific procedure for claims: administrative review under state law, here Wis. Stat. § 5.061, which contemplates judicial review under Wis. Stat. ch. 227. Appellants lack standing, and the district court properly held that it lacked jurisdiction.

1. **Appellants lack standing because their claims are only for alleged violations of HAVA's statutory procedures, which do not meet Article III's injury-in-fact requirement.**

Appellants lack standing because their claims are only for alleged statutory violations of HAVA's procedures and do not show a concrete harm to themselves.

Appellants' claims are based on alleged violations of 52 U.S.C. § 21112's statutory procedures, including that "[u]nder 52 U.S.C. § 21112, the plaintiffs have a right to file a HAVA administrative complaint against" the Commission; that "[u]nder 52 U.S.C. § 21112, the plaintiffs have a right to have a hearing, if requested, on the record regarding their written HAVA administrative complaint"; and that "[u]nder 52 U.S.C. § 21112, the plaintiffs have a right to an appropriate remedy if HAVA has been violated." (Dkt. 15 ¶¶ 47–49); *see also* 15 ¶ 98 ("Plaintiffs . . . as complainants, are harmed because they cannot exercise their federal rights under 52 U.S.C. § 21112 or Wis. Stat. § 5.061 or both"), ¶ 99 ("Plaintiffs . . . as complainants are further harmed by the lack of federally-required administrative process completed within 90 days because [the Commission's] failure to provide an administrative process for HAVA administrative complaints against state election officials responsible for adjudicating HAVA complaints").) They also assert that the procedures

established by Wis. Stat. § 5.061 do not meet 52 U.S.C. § 21112's requirements. (Dkt. 15 ¶¶ 102–20.)

Appellants' claims are all the same: they are based solely on Appellees' alleged violations of procedures in 52 U.S.C. § 21112. Appellants' purely statutory "injuries" are not concrete for purposes of establishing the injury-in-fact that Article III requires—they do not show any real harm to Appellants and are merely abstract grievances. *Bost*, 114 F.4th at 640. Ultimately, Appellants have not shown how they are harmed by Appellees' supposed violations of 52 U.S.C. § 21112, as the district court correctly found. (Dkt. 43:8 (it is "not enough" for Appellants to "argue they were harmed because [the Commission] has not followed 52 U.S.C. § 21112(a)").)

Appellants' alleged harm lacks "a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *Dinerstein*, 73 F.4th at 511 (quoting *TransUnion*, 594 U.S. at 424). A violation of a federal statute, standing alone, is not such a traditionally recognized harm. They cannot "'identif[y] a close historical or common-law analogue' for [their] asserted injury." *Id.* (quoting *TransUnion*, 594 U.S. at 424).

Appellants' pursued 42 U.S.C. § 1983 claims for procedural violations of 52 U.S.C. § 21112, nothing more. They lack Article III standing, and the district court properly held that it lacked subject matter jurisdiction.

> **2.    Appellants lack standing because their alleged injuries cannot be redressed by federal judicial relief when HAVA mandates adjudication of claims by state tribunals.**

Appellants also lack standing because their alleged injuries cannot be "redressed by judicial relief." *Nabozny*, 84 F.4th at 734 (quoting *TransUnion*, 594 U.S. at 423). There is no federal judicial remedy for their HAVA claims, only a state-based one. "Without 'an injury that . . . the court can remedy, there is no case or controversy.'" *Id.* (citation omitted).

Rather than creating a private cause of action under HAVA or through section 1983, Congress established a state-based administrative-complaint process to remedy HAVA subchapter III grievances. 52 U.S.C. § 21112. For states that accept federal funds, those procedures "shall be uniform and nondiscriminatory" and allow a person to "file a complaint." 52 U.S.C. § 21112(2)(A) & (B). HAVA requires, at the request of the complainant, "a hearing on the record." 52 U.S.C. § 21112(a)(2)(E). "If, under the procedures, the State determines that there is a violation of any provision of subchapter III, *the State shall provide the appropriate remedy*." 52 U.S.C. § 21112(a)(2)(F).

Wisconsin enacted Wis. Stat. § 5.061, entitled "Compliance with federal Help American Vote Act." A complainant may file with the Commission a complaint alleging a violation of "Title III of P.L. 107-252" (HAVA subchapter III). Wis. Stat. § 5.061(1). The complainant "may request a hearing and the

22

matter shall then be treated as a contested case under ch. 227." Wis. Stat. § 5.061(3).

Appellants filed administrative complaints with the Commission alleging violations of provisions of HAVA subchapter III. (Dkt. 15 ¶¶ 20–22, 26–27, 31, 56–59; 15-1; 15-3.) They alleged that the Commission *itself* violated HAVA. The Commission decided it could not decide complaints against itself because it would constitute a conflict of interest. *Cf. Teigen v. Wis. Elections Comm'n*, 976 N.W.2d 519, 533 (Wis. 2022) (lead op.), *overruled on other grounds by Priorities USA v. Wis. Elections Comm'n*, 8 N.W.3d 429, 432 (Wis. 2024). Therefore, the Commission returned Appellants' complaints without consideration or dismissal and did so without granting Appellants' requested hearings. (Dkt. 15 ¶¶ 29, 33, 60–69; 15-2; 15-4.) Appellants asserted that these Commission decisions violated federal law, but that argument should be directed to the Wisconsin state courts.

Under Wisconsin law, when a state agency issues a decision that adversely affects the substantial interests of a person, that decision is subject to judicial review as provided in Wis. Stat. ch. 227. Wis. Stat. §§ 227.52, 227.53(1). Administrative decisions can adversely affect the substantial interests of a person "by action or inaction, [and] whether affirmative or negative in form." Wis. Stat. § 227.52. Agency decisions subject to review may come from contested or non-contested cases. Wis. Stat. §§ 227.53(1)(a)2. & 2m. A party to

an administrative proceeding who is aggrieved by a final agency decision may commence judicial review in Wisconsin circuit court. Wis. Stat. § 227.53(1)(a). Wisconsin Stat. ch. 227 provides "the exclusive method for judicial review of agency determinations." *Turkow v. DNR*, 576 N.W.2d 288, 291 (Wis. Ct. App. 1998). "[W]here a statute relating to an administrative agency provides a direct method of judicial review of agency action, such method of review is generally regarded as exclusive, especially where the statutory remedy is plain, speedy, and adequate." *Kegonsa Joint Sanitary Dist. v. City of Stoughton*, 274 N.W.2d 598, 604 (Wis. 1979).

Here, Appellants received decisions from the Commission returning their HAVA subchapter III complaints. The Commission did not grant Appellants their requested hearings. That means that Appellants, assuming for the sake of argument that they were "aggrieved," Wis. Stat. § 227.53(1), were required to seek judicial review under Wis. Stat. ch. 227 in state court to challenge the Commission's decisions.

Appellants properly filed their HAVA subchapter III complaints with the Commission under Wis. Stat. § 5.061 in compliance with the state procedures, but they then went astray. Rather than seeking state-court review if they believed the Commission erred in returning their complaints and implicitly denying their requests for a hearing, they went to federal court. Appellants chose the wrong path.

24

Appellants' failure to challenge the Commission's action under Wis. Stat. § 5.061 in state court ignored the exclusive state-court remedy that Congress envisioned. Congress created "*State-based* administrative complaint procedures to remedy grievances" of HAVA subchapter III. 52 U.S.C. § 21112. Not only did Wisconsin create this procedure, but the federal statutory language does not lend itself to any reasonable interpretation that would permit Appellants to seek remedies for their grievances in federal court. And to the extent these state-based administrative procedures include judicial review, Wis. Stat. ch. 227 provides that.

Other federal courts have followed this reasoning. In *Oels v. Dunleavy*, No. 3:23-CV-00006-SLG, 2023 WL 3948289, *3 (D. Alaska June 12, 2023), the district court held that "HAVA does not create a private right of action in federal court." *Id.* It explained that "Plaintiffs cannot pursue their HAVA claims" and instead "must follow the state-based administrative complaint procedure" in Alaska law. *Id.* If they "do not succeed at the agency level, they can appeal the state administrative agency decision to the Alaska Superior Court, but not to the federal district court." *Id.* Given the existence of Wis. Stat. § 5.061 and subsequent Wis. Stat. ch. 227 judicial review, the same outcome should follow here: Appellants' attempt to invoke federal court jurisdiction was properly dismissed. *Id.*

Although not couched in terms of standing, other federal district courts have issued decisions properly preventing plaintiffs from placing their HAVA grievances before them. In *Minnesota Voters Alliance v. City of Minneapolis*, No. CV 20-2049 (MJD/TNL), 2020 WL 6119937, *5 (D. Minn. Oct. 16, 2020), the district court held that "HAVA does not create a private right of action." To reach this conclusion, the court looked to HAVA's requirement that States "create an administrative procedure to allow filing of HAVA complaints that provides the 'appropriate remedy' if the state determines that there was a violation, 52 U.S.C. § 21112(a)." *Id.* And in *Iowa Voter Alliance v. Black Hawk County*, No. C20-2078-LTS, 2020 WL 6151559, *2 (N.D. Iowa Oct. 20, 2020), the district court held that the fact "that Congress explicitly granted enforcement powers to the Attorney General and the states weighs strongly against finding an implicit right of action for private parties."

In sum, Congress required that Appellants' HAVA claims can be remedied only through state law procedures, so Appellants' alleged injuries cannot be "redressed by judicial relief." *Nabozny*, 84 F.4th at 734 (citation omitted). They lack standing, and the district court properly held that it lacked jurisdiction.

## II.   Appellants' arguments are not persuasive.

Appellants raise several standing arguments, but none of them should persuade this Court to disturb the district court's judgment.

## A.    Heuer and Brown's First Amendment argument does not remedy their lack of standing.

Heuer and Brown argue that they established a concrete harm for purposes of standing based on a violation of their First Amendment right to petition the government for grievances. (App. Br. 33–34, 36–37.) Wisconsin Voter Alliance also asserts this theory. (*See id.* at 18, 28–29.) Appellants have not shown a concrete harm based on an alleged violation of their right to petition. They remain free to petition the government—whether the Wisconsin State Legislature, Congress, or the Commission—to address their asserted grievances.

"The right to petition the government for redress of grievances is found in the First Amendment to the Constitution." *Hilton v. City of Wheeling*, 209 F.3d 1005, 1006 (7th Cir. 2000). "The right to petition allows citizens to express their ideas, hopes, and concerns to their government and their elected representatives." *Borough of Duryea v. Guarnieri*, 564 U.S. 379, 388 (2011).

Although "various levels of public participation in various kinds of policy decisions may be" sensible, the Supreme Court "has never held, and nothing in the Constitution suggests it should hold, that government must provide for such participation." *Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984); *see also Int'l Union of Operating Eng'rs, Local 139, AFL-CIO v. Daley*, 983 F.3d 287, 298 (7th Cir. 2020) (applying *Knight*). "[T]he rights to

speak, associate, and petition [do not] require government policymakers to listen or respond to individuals' communications on public issues." *Knight*, 465 U.S. at 285. "So while the government may not interfere with the right to petition, . . . it need not grant the petition, no matter how meritorious it is." *Hilton*, 209 F.3d at 1007 (internal citations omitted).

Here, Appellants are disappointed that Appellees did not hear the merits of their HAVA administrative complaints but, as noted by the Supreme Court, nothing in the First Amendment or the Court's cases interpreting it suggests that the Commission had to respond to Appellants' grievances in any particular manner, or at all. "A petition conveys the special concerns of its author to the government and, in its usual form, re-quests action by the government to address those concerns." *Guarnieri*, 564 U.S. at 388–89. Appellants' own allegations support that they were in fact able to petition the Commission for redress of their grievances. (Dkt. 15 ¶¶ 26, 31.) "That the [Commission] did not take any action, or at least to the satisfaction of Plaintiffs, is of no moment." *Shipley v. Chi. Bd. of Election Comm'rs*, 947 F.3d 1056, 1064 (7th Cir. 2020). Heuer, Brown, and Wisconsin Voter Alliance remain free to petition the government to express their concerns about the Commission's compliance with HAVA, so their theory of concrete harm based on the right to petition the government does not establish Article III standing.

Appellants further argue that "HAVA commands the right to petition be protected by the processes the Act commands the state to follow." (App. Br. 36.) They cite no authority to support their argument and thus have waived it; "perfunctory and undeveloped arguments, as well as arguments that are unsupported by pertinent authority, are waived." *White v. United States*, 8 F.4th 547, 552 (7th Cir. 2021).

HAVA says nothing about the right to petition under the First Amendment, nor could Congress, through HAVA, establish the contours of the right to petition. The First Amendment is a limit on what Congress may do, not a license to legislate further. U.S. Const. amend. I ("Congress shall make no law . . ."). "The Bill of Rights limits the power of government." *Archie v. City of Racine*, 847 F.2d 1211, 1213 (7th Cir. 1988) (en banc).

Appellants also are wrong in assuming that a "fail[ure] to follow HAVA procedural mandates *under state law*" translates into a concrete harm rooted in the First Amendment. (App. Br. 37 (emphasis added).) An alleged violation of state law does not create a federal constitutional claim.

This Court has recognized that "[a] state ought to follow its law, but to treat a violation of state law as a violation of the Constitution is to make the federal government the enforcer of state law." *Archie*, 847 F.2d at 1217 (citation omitted). Therefore, "[s]tate rather than federal courts are the appropriate institutions to enforce state rules." *Id.* (citation omitted). Appellants cannot

establish Article III standing for a First Amendment right-to-petition claim based on Appellees' alleged failure to follow Wis. Stat. § 5.061, a state law.

Lastly, the cases Appellants cite in support of their right-to-petition theory are off-base. (*See* App. Br. 33–34.)

Appellants rely on *Guarnieri*, but the case is factually distinguishable. (*Id.* at 33.) *Guarnieri* "concerns the extent of the protection, if any, that the [First Amendment] Petition Clause grants public employees in routine disputes with government employers." 564 U.S. at 382. Appellants' case does not involve a public employee's suit against an employer, so *Guarnieri* is inapt. And the Court explained that "[t]he right to petition allows citizens to express their ideas, hopes, and concerns to their government." *Id.* at 388. The Court did not hold that the right to petition includes a right to have the government respond to such advocacy. As argued above, there is no requirement that the government respond. *Knight*, 465 U.S. at 285; *Daley*, 983 F.3d at 298.

*Whitmore v. Arkansas*, 495 U.S. 149 (1990), is far afield. (*See* App. Br. 34.) The question in *Whitmore* was "whether a third party has standing to challenge the validity of a death sentence imposed on a capital defendant who has elected to forgo his right to appeal to the State Supreme Court." 495 U.S. at 151. *Whitmore* has nothing to do with this case.

*Speech First, Inc. v. Cartwright*, 32 F.4th 1110 (11th Cir. 2022), is inapposite. (*See* App. Br. 34.) First, the case addressed the First Amendment

right to free speech, not the right to petition. *Speech First, Inc.*, 32 F.4th at 1119. Appellants do not assert a violation of their right to free speech. Second, Appellants' quoted language attributed to *Speech First*, *Inc.*, (App. Br. 34), is not found in that decision.

In sum, Heuer and Brown have not shown that they have Article III standing to assert their claims.

### B.    Wisconsin Voter Alliance's arguments are unpersuasive.

Apart from the individual plaintiffs, Wisconsin Voter Alliance argues that it has standing under organizational- and associational-standing theories. (*Id.* at 19–32.) These arguments fare no better.

### 1.    Wisconsin Voter Alliance does not have organizational standing.

Wisconsin Voter Alliance argues that it has organizational standing, (*id.* at 19–29), but its arguments fail under *Alliance for Hippocratic Medicine*. The district court correctly applied the principles of that case. (Dkt. 43:9.)

*Alliance for Hippocratic Medicine* teaches that "organizations may have standing 'to sue on their own behalf for injuries they have sustained.'" 602 U.S. at 393 (citation omitted). "In doing so, however, organizations must satisfy the usual standards for injury in fact, causation, and redressability that apply to individuals." *Id.* at 393–94.

*Alliance for Hippocratic Medicine* addressed medical associations' standing to assert claims that the Food and Drug Administration "'impaired' [the associations'] ability to provide services and achieve their organizational missions'" by the regulating the use of the abortion drug mifepristone. *Id.* at 394. The Court held that "[t]hat argument does not work to demonstrate standing." *Id.*

The Court explained that "[l]ike an individual, an organization may not establish standing simply based on the 'intensity of the litigant's interest' or because of strong opposition to the government's conduct . . . 'no matter how longstanding the interest and no matter how qualified the organization.'" *Id.* (citations omitted). Instead, "[a] plaintiff must show 'far more than simply a setback to the organization's abstract social interests." *Id.* (citation omitted).

Here, Wisconsin Voter Alliance's allegedly impacted activities are abstract and vague based on its own evidence and descriptions. It asserts that it "is a Wisconsin non-profit corporation focused on improving legal compliance in the subject area of elections." (App. Br. 6.) Its "core activities include, but are not limited to, protecting the rights of the organization, where applicable, its members, and those associated with the WVA who engage in promoting or engaging in other core activities of the organization." (*Id.*) The activities "also include investigating, reporting and using legally available resources,

methods, procedures, or processes, including governmental administrative processes, or judicial means to achieve its objectives." (*Id.* at 7.)

Wisconsin Voter Alliance argues that the Commission's "failure to consider and decide the HAVA complaint[s] . . . interfered with WVA's core political activities as it relates to election processes and procedures, and the integrity of those processes." (*Id.* at 18; *see also id.* at 23, 25.) Those "core activities" include: "using all available governmental 'tools,' whether under Wisconsin's Public Records Act, or through administrative filings, the results of which allow for the WVA to call its members to action, seek legislative recourse through the amending of existing law or creating new law, or testifying before the legislature." (*Id.* at 18; *see also id.* at 23–24.)

Like the medical associations in *Alliance for Hippocratic Medicine*, Wisconsin Voter Alliance has not demonstrated organizational standing based on these alleged "setback[s] to the organization's abstract social interests." 602 U.S. at 394 (citation omitted). Wisconsin Voter Alliance's "core activities" are not impaired by the Commission's declining to address the merits of the HAVA complaints in this case. Absent the Commission's addressing the merits of the complaints, Wisconsin Voter Alliance can freely make public-records requests and administrative filings, communicate with its members, and lobby and testify before the Wisconsin State Legislature about election procedures. Its issue-advocacy interests as to elections and election procedures are not

hindered when the Commission did not address the merits of the HAVA complaints Appellants filed.

Appellants argue that "the lack of a [Commission] decision interfered with reporting to the legislature of the need to amend laws or create new laws or regulations." (App. Br. 25–26.) This is so, they claim, because the Commission's "failure to consider and decide the HAVA complaint did not allow the WVA to determine if a law had been violated." (*Id.* at 27.)

Appellants' reasoning is unpersuasive. It is akin the what the Supreme Court found unavailing in *Alliance for Hippocratic Medicine*: "strong opposition to the government's conduct"—in this case, through the filing of HAVA complaints with and against the Commission, and then filing this lawsuit—is not enough to establish organizational standing. 602 U.S. at 394. Wisconsin Voter Alliance does not establish standing merely based on the purpose of its existence.

Assuming for argument's sake that the Commission, its members, and its administrator violated HAVA subchapter III, as alleged, it is unclear how the Commission's failure to address the merits of the complaints *interfered with* Wisconsin Voter Alliance's ability to communicate with its members, the public, the Legislature, or others about the putative violations. Wisconsin Voter Alliance is free to do so. While a Commission decision finding a violation might validate Wisconsin Voter Alliance's complaints, it would neither impair

nor aid the organization's ability to communicate with anyone about HAVA, the complaints, or the need for policy change. Those organizational interests would remain unaffected.

Lastly, the district court correctly held that Wisconsin Voter Alliance's alleged diversion of resources from its other initiatives to litigating this case was insufficient to confer standing under *Alliance for Hippocratic Medicine*. (*See* Dkt. 43:9.) Specifically, "the Supreme Court has shut the door on that argument: '[A]n organization that has not suffered a concrete injury caused by a defendant's action cannot spend its way into standing simply by expending money to gather information and advocate against the defendant's action.'" (Dkt. 43:9 (quoting *All. for Hippocratic Med.*, 602 U.S. at 394).)

In sum, under *Alliance for Hippocratic Medicine*, Wisconsin Voter Alliance does not have organizational standing.

## 2. Wisconsin Voter Alliance does not have associational standing.

Wisconsin Voter Alliance also incorrectly argues that it has associational standing. (App. Br. 30–32.)

An association has standing to bring suit on behalf of its members when three factors are met: "(1) "its members would otherwise have standing to sue in their own right", (2) "the interests it seeks to protect are germane to the organization's purpose", and (3) "neither the claim asserted nor the relief

requested requires participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977); *Parents Protecting Our Child., UA v. Eau Claire Area Sch. Dist.*, 95 F.4th 501, 505 (7th Cir. 2024) (applying the *Hunt* factors). "This three-part test for associational standing 'guarantees the satisfaction' of Article III 'by requiring an organization suing as representative to include at least one member with standing to present, in his or her own right, the claim (or the type of claim) pleaded by the association.'" *Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, 2 F.4th 1002, 1008 (7th Cir. 2021) (citation omitted). "Associational standing, then, is derivative of—and not independent from— individual standing." *Id.*

Wisconsin Voter Alliance does not meet the required *Hunt* factors.

First, Wisconsin Voter Alliance has not identified a member of its organization who "would otherwise have standing to sue in their own right." *Hunt*, 432 U.S. at 343. The only individual members that Appellants argue meet the first *Hunt* factor are Heuer and Brown. (App. Br. 31.) As argued above, Heuer and Brown lack standing to assert their claims.

Second, Wisconsin Voter Alliance has not shown that the interests it seeks to protect are "germane to [its] purpose[s]." *Hunt*, 432 U.S. at 343. Specifically, Appellants point to Brown's and Heuer's declarations in support of the second *Hunt* factor. (App. Br. 31) They argue that Brown and Heuer asserted their

"personal stake" in their HAVA complaints filed with the Commission "to determine whether or not a violation of the federal law occurred." (*Id.* (quoting Dkt. 34:8; 33:3).) They further contend that without a decision from the Commission, "corrective action by the agency, election official, [themselves], or others cannot be taken," including "recommending, reporting, or developing legislation, rules, regulations, or guidelines to ensure the violation ceases, or does not occur again in the future." (*Id.* (quoting Dkt. 34:8; 33:3).)

The interests Appellants identify would not be thwarted if Wisconsin Voter Alliance is not allowed to proceed on its federal claims. The Commission's declining to rule on the merits of Brown and Heuer's HAVA complaints will not undermine Appellants' issue-advocacy efforts as an organization. Wisconsin Voter Alliance can continue to advocate for issues, promote policy, and lobby for change in the law regarding elections regardless of the outcome of the HAVA complaints. The second *Hunt* factor is not met, either.

## CONCLUSION

This Court should affirm the district court's judgment.

Dated this 30th day of April 2025.

Respectfully submitted,

JOSHUA L. KAUL
Attorney General of Wisconsin

s/ Clayton P. Kawski
CLAYTON P. KAWSKI*
Assistant Attorney General
State Bar #1066228

STEVEN C. KILPATRICK
Assistant Attorney General
State Bar # 1025452

JODY J. SCHMELZER
Assistant Attorney General
State Bar # 1027796

Attorneys for Defendants-Appellees

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 266-8549 (Kawski)
(608) 266-1792 (Kilpatrick)
(608) 266-3094 (Schmelzer)
(608) 294-2907 (Fax)
kawskicp@doj.state.wi.us
kilpatricksc@doj.state.wi.us
schmelzerjj@doj.state.wi.us

*Counsel of Record

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B), typeface requirements of Fed. R. App. P. 32(a)(5), and type style requirements of Fed. R. App. P. 32(a)(6).

This brief contains 8,146 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and has been prepared in a proportionally spaced typeface using Microsoft Word 2013 in 13 point Century Schoolbook.

Dated this 30th day of April 2025.

Electronically signed by:

s/Clayton P. Kawski
CLAYTON P. KAWSKI
Assistant Attorney General

## CERTIFICATE OF SERVICE

I certify that on April 30, 2025, I electronically filed the foregoing Brief of Defendants-Appellees with the clerk of court using the CM/ECF system, which will accomplish electronic notice and service for all participants who are registered CM/ECF users.

Dated this 30th day of April 2025.

Electronically signed by:

s/Clayton P. Kawski
CLAYTON P. KAWSKI
Assistant Attorney General